**TEAMSTERS OVER THE ROAD, CITY TRANSFER DRIVERS, HELPERS, DOCKMEN AND WAREHOUSEMEN, LOCAL UNION NO. 147, Appellant,**

v.

**WARREN COUNTY BOARD OF SUPERVISORS, Appellee.**

No. 83–240.

Supreme Court of Iowa.

May 16, 1984.

Neil A. Barrick, Des Moines, for appellant.

John W. Criswell, County Atty., for appellee.

LARSON, Justice.

The plaintiff Teamsters Union appeals from a summary judgment entered against it in its action to enforce a collective bargaining agreement with Warren County. The union represents several employees of the sheriff's department of the county. The union challenged a decision by the county to discontinue its practice of paying for telephone service for the employees' homes. As the collective bargaining agreement provided, the matter went through a three-step grievance procedure. At the last step, a hearing by a grievance committee, the county was directed to continue the practice of paying for the service, but the county refused to comply. This suit to enforce the grievance committee's award followed. The district court refused enforcement on the ground the county had authority under the agreement to refuse enforcement of any grievance award "involv[ing] the expenditures of funds." We affirm.

■ These parties are governed by the Iowa Public Employment Relations Act (PERA), Iowa Code chapter 20, in the conduct of their bargaining and grievance procedures. Terms of any collective bargaining agreement may be enforced by a civil action in district court, Iowa Code section 20.17(5). We held in *Sergeant Bluff-Luton Education Association v. Sergeant Bluff-Luton Community School District*, 282 N.W.2d 144 (Iowa 1979) that pursuant to section 20.17(5) and the policy of the PER Act, an arbitrator's award entered pursuant to a collective bargaining agreement could be enforced in district court, notwithstanding the absence of express authority to enforce an award. Here, we hold that an action to enforce a grievance committee decision, entered pursuant to the agreement, may be enforced in district court as well.

The PER Act provides that public employees must follow either the grievance procedure of the collective bargaining agreement or that provided for by chapter

19A, relating to the state merit system. Iowa Code § 20.18. *See* Iowa Code § 19A.9(17) (provision for uniform grievance procedure) *and* Iowa Admin.Code [570] chapter 12 (rules establishing uniform grievance procedure). Since the collective bargaining agreement here established a grievance procedure, we look to it, and not to the statutory procedure, in passing on the issues raised. *See* Iowa Code § 20.18.

Under step one of the procedure, as set out in this collective bargaining agreement, a grievance must be raised orally with the employee's immediate supervisor, who has five days to investigate and respond. Under step two, a grievant dissatisfied with the first-step decision may make a written report on the grievance and submit it to the department head within five working days of the immediate supervisor's response under step one.

Under step three, a dissatisfied grievant may request a hearing before a grievance committee comprised of four members, two appointed by the county and two by the union. The grievants here followed step three, and the grievance committee ruled that telephone service should continue to be furnished for the officers. It is the effect of that decision which is at issue.

While step three provided the grievance committee's decision "shall be final and binding on all parties," it then provided "except that decisions which involve the expenditures of funds or changes in classifications must be approved by the Board of Supervisors."

The decision here obviously concerns an expenditure of funds. The county argues that we need look no further; the agreement is clear on its face and it can be read in no other way than to grant it the power to refuse enforcement of the committee decision. The union argues that this would effectively gut the grievance procedure because virtually all grievances involve expenditures directly or indirectly. It argues that this language probably refers only to the board's power to pass on claims by creditors under Iowa Code section 331.20.

■ The requisites for summary judgment are well known. It may be entered only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Froning & Deppe, Inc. v. South Story Bank & Trust Co.*, 327 N.W.2d 214, 215 (Iowa 1982); *Barnhill v. Davis*, 300 N.W.2d 104, 105 (Iowa 1981). Where, as here, no extrinsic evidence is presented bearing on the interpretation of the contract language, we treat the issue as one of law, based only on examination of the words used. *Farm Bureau Mutual Insurance Co. v. Sandbulte*, 302 N.W.2d 104, 108 (Iowa 1981); *Connie's Construction Co., Inc. v. Fireman's Fund Insurance Co.*, 227 N.W.2d 207, 210 (Iowa 1975).

### I. The Procedural Issue.

We first address the county's argument that the grievants were required to proceed to step four as a prerequisite to judicial review of the grievance committee's step-three decision. A fourth step is provided by the collective bargaining agreement:

#### STEP FOUR

If the grievance is not settled in accordance with the foregoing procedure, the grievant or Employee Organization may, within five (5) working days after receipt of the answer in Step *Two (2)*, invoke the impasse procedure for the purpose of selecting an arbitrator as specified in this Agreement.

(Emphasis added.) It should be noted that this "fourth" step is to be taken within five days of the decision under step two, not three. In other words, arbitration may be sought following the decision by the department head under step two, without submission to the grievance committee under step three. While step four provides that "[i]f the grievance is not settled in accordance with the foregoing procedure," a grievant may seek arbitration, we do not read that as a further step in the grievance procedure, but rather as an election by the grievant who, after step two is completed,

may seek review by a grievance committee (step three) or arbitration (step four).

■ This view, that the decision to arbitrate is solely that of the employee, is consistent with the PER Act which provides that, in the case of an employee grievance, arbitration may be invoked only if the public employee agrees. Iowa Code § 20.18. We conclude that arbitration under step four is not a prerequisite to judicial review, under section 20.17(5), of the grievance committee decision. We therefore proceed to a discussion of the merits.

## II. Interpretation of the Collective Bargaining Contract.

■ May the county board, in effect, veto the decision of the grievance committee because it involves "expenditures of funds"? While there is merit in the union's argument that construing the board's veto power so broadly as to permit it to refuse enforcement when *any* expenditure of funds is involved would impair the effect of the grievance procedure in many cases, we do not agree that the result would be absurd.

First, it is conceivable that many subjects of employer-employee relations would not involve expenditure of funds.

More importantly, the broadly couched "veto" power of the board was agreed to by the union as part of the collective bargaining agreement. The individual grievants, moreover, had an election following step two of the grievance procedure to opt for arbitration which has no such veto power.[1]

Also, allowing control over expenditures appears consistent with the PER Act. A taxing body such as a board of supervisors, operating on a budget, must retain some control over expenditures and their timing. One of the stated purposes of the PER Act is "to protect the citizens of this state by assuring effective and orderly operations of government...." Iowa Code § 20.1. *See City of Des Moines v. P.E.R.B.*, 275

N.W.2d 753, 761 (Iowa 1979) (need for certainty in formulating budget considered in construction of PER Act).

It is conceivable that a grievance award dropped on a public employer at a time when budgeting for it was impossible or of such size as to be beyond its capabilities, would wreak havoc with the budgetary process. In contrast to the budget protection in the case of arbitration provided by Iowa Code sections 20.22(9)(c) and (d) (arbitrators must consider "the ability of the public employer to finance economic adjustments" and "[t]he power of the public employer to levy taxes and appropriate funds for the conduct of its operations"), there is no such protection for an employer in the case of a final grievance award absent a provision such as found here.

Plaintiffs argue that the grievance committee's decision in their favor embodied the common law of the industry that it was based on the collective bargaining agreement and was therefore binding on the court under the arbitration principles recognized in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). While an award was made by the grievance committee in favor of the plaintiffs, however, it made no decision on whether that award was binding upon the county in view of its claimed veto power, which is the key issue here. The grievance award would therefore have no binding effect even if we were to conclude that the "essence of the contract" principles of *United Steelworkers* were applicable to a grievance decision.

We believe the district court correctly interpreted the provision allowing the board to refuse enforcement of the grievance committee decision.

AFFIRMED.

All justices concur except WOLLE, HARRIS, McCORMICK, and CARTER, JJ., who dissent in part and concur in part.

---

1. There are statutory restrictions on arbitration awards, based upon budget considerations but no absolute veto. *See* Iowa Code §§ 20.22(9)(c) and (d). This matter is discussed later in more detail.

WOLLE, Justice (concurring in part and dissenting in part).

I agree with the majority opinion only to the extent that it holds that a grievance committee decision which an employer will not honor may ordinarily be enforced by an action in district court. I dissent because I believe the county did not carry its heavy burden to show the absence of a genuine issue of fact and therefore the county was not entitled to summary judgment.

We have previously held summary judgment may be inappropriate even though both parties have filed summary judgment motions and contended no issue of fact remained. *See, e.g., Brubaker v. Barlow,* 326 N.W.2d 314, 315 (Iowa 1982); *Lyon v. Willie,* 288 N.W.2d 884, 894 (Iowa 1980). Even on undisputed facts, the drastic remedy of summary judgment ought not to be invoked if reasonable minds may draw different inferences from them. *Enochs v. City of Des Moines,* 314 N.W.2d 378, 380 (Iowa 1982); *Tasco, Inc. v. Winkel,* 281 N.W.2d 280, 282 (Iowa 1979).

The core issue in this case is what the parties intended by their wording of one sentence in the collective bargaining agreement. That sentence, the last in a paragraph which described the third of four steps in the contract's grievance procedure, reads:

A decision of a majority of the committee shall be final and binding on all parties except that decisions which involve the expenditures of funds or changes in classifications must be approved by the Board of Supervisors.

From that wording, and the sketchy facts and circumstances shown in this record, the county plausibly contends that the "except for" clause meant that grievance committee decisions requiring expenditures of funds would be subject to approval of the board of supervisors and unenforceable unless approved. The union, however, makes an equally plausible argument from the same circumstances but with emphasis placed on the last few words of the "except for" clause. It contends that the parties intended grievance committee decisions involving expenditures "must be approved by the Board of Supervisors." Even though the two interpretations are diametrically opposed, each can reasonably be supported by placing emphasis on certain words in the sentence and certain circumstances disclosed by the summary judgment record. I believe that a reasonable fact finder might arrive at either interpretation after considering all of the evidence which the parties would present at trial. I therefore would reverse the trial court's entry of summary judgment for the county and remand this case to allow both parties to develop their evidence fully at a trial on the merits.

I. The issue which this contractual language presents does not involve "construction", the legal effect of a contract, but rather "interpretation", the meaning of contractual words. Interpretation is an issue for the trier of fact when a choice must be made between reasonable inferences to be drawn from extrinsic evidence. *Brubaker v. Barlow,* 326 N.W.2d at 316; *Connie's Construction Co. v. Fireman's Fund Insurance Co.,* 227 N.W.2d 207, 210 (Iowa 1975). Some extrinsic evidence was included in the portions of the record which we are to consider in determining whether summary judgment should be granted. The county attached to its motion the affidavit of its attorney purporting to establish that when the parties negotiated the collective bargaining agreement they used the "except that" clause to give the county what amounts to a broad veto power. The union argued, however, that the "except for" clause was inserted not for that purpose but rather for the purpose of implementing the final and binding nature of a grievance committee decision at step three. Like the summary judgment court we must view the entire record in the light most favorable to the resisting party. *Tasco, Inc. v. Winkel,* 281 N.W.2d at 282. If the union's interpretation was reasonably compatible with the wording of the sentence and inferences to be drawn from the agreed facts, a genuine issue of fact for

trial was generated. As we held in *Brubaker v. Barlow:*

> Unless this evidence [of intent] was so clear that reasonable minds can reach only one conclusion, the question of intent is a fact question which cannot be disposed of on a motion for summary judgment.

326 N.W.2d at 316.

II. I believe that the union has proffered a reasonable explanation of how the "except for" clause supports its own interpretation. When this collective bargaining agreement was negotiated just prior to July of 1980, Iowa statutes provided that persons seeking payment from a county were required first to submit claims to the board of supervisors for allowance in accordance with certain formal procedures. Iowa Code §§ 331.19–.21 (1979) (current versions at Iowa Code §§ 331.-303(1)(c), .504(7), .504(8) (1983)). The union contends the "except for" clause was inserted in the contract to eliminate the possibility that the county could effectively veto an otherwise final and binding decision by simply refusing to approve subsequent formal claims for payment. Read in the light of those statutory provisions, the final words "must be approved by the Board of Supervisors" can reasonably be interpreted not as an escape clause for the county but rather as the very opposite—the imposition on the county of a contractual obligation to approve expenditures which it must make to comply with a grievance committee decision. The union's interpretation arises from a fair and sensible reading of the sentence in question. It squares with the Iowa statute which otherwise would require the board of supervisors to approve monetary claims against a county.

The union's interpretation is also more consistent with the overall purpose and functioning of the four-step grievance procedure than is the county's interpretation. The collective bargaining agreement, according to its preamble, had as one of its purposes the intent "to provide an orderly and prompt method for handling and processing grievances." The union's interpre-

tation is entirely compatible with that purpose, for it serves to implement the third step by requiring the county to approve expenditures and pay what a grievance committee has decided it owes. The county's interpretation, on the other hand, would vest the power of veto in one party and allow that party to render futile the efforts expended by both parties' representatives during processing of the grievance at the third step. The written request for a third-step hearing, the appointment of four committee members, the hearing of the grievance, and the forging of a decision would accomplish nothing whenever the board of supervisors exercised its veto. Parties who intended to dispose of grievances in an "orderly and prompt" fashion would arguably not have intended such a waste of time and effort.

The county's veto interpretation would be less disruptive of the entire grievance procedure if the contract language clearly provided grievants the option to obtain a fourth-step arbitration award on matters involving county expenditures. I conclude, however, that the collective bargaining agreement does not by its terms clearly allow the union either to seek arbitration after the county board of supervisors has vetoed a third-step decision, or to bypass the third step altogether. Arbitration following a veto is contrary to the provision quoted in the majority opinion that requires a grievant to request arbitration within five working days after the receipt of the answer in step two. Step three would usually take more than five days; it did in this case. Moreover, the contract provides:

> If a grievance is not presented within the time limits set herein, it shall be deemed "waived."

The majority opinion finds that the grievants had an election after step two to seek review by arbitration (step four) rather than grievance committee (step three). In reaching that conclusion from the wording of step four, however, the majority reads out of the quoted paragraph the words, "if the grievance is not settled in accordance with the foregoing procedure ...." I be-

lieve the latter clause means that step three is part of "the foregoing procedure" which a grievant must first exhaust. Moreover, step three begins with the statement:

> If disposition of the grievance in Step Two (2) is not satisfactory to the grievant, he/she shall request in writing that a grievance committee hear the alleged grievance.

It is apparent that the collective bargaining agreement is internally inconsistent and ambiguous at best in describing the time limits which grievants must abide and the steps which grievants must pursue in exhausting available dispute-resolution procedures. Again, a proper interpretation of those pertinent clauses should await the presentation of evidence at a trial on the merits rather than being decided by summary judgment.

III. I also disagree with the suggestion in the majority opinion that the county's interpretation of the "except for" clause is supported by Iowa Code subsections 20.22(9)(c) and (d). The majority reads those provisions of the PER Act to provide the county with statutory protection from a large and unbudgeted arbitration award. It then infers that the county needed the "except for" veto clause in step three to protect it from a large and unbudgeted award of a grievance committee. I read those sections of the PER Act differently, believing that the statutes clearly distinguish between grievance arbitration on the one hand and the type of binding arbitration which follows an impasse in collective bargaining negotiations on the other. The cited sections of the PER Act provide guidelines to arbitrators who have been selected to resolve impasses in collective bargaining negotiations, pursuant to Iowa Code sections 20.19–.22 (1981). Grievance arbitration is decidedly different than the type of arbitration which our statutes allow following a breakdown in collective bargaining. Iowa Code section 20.18 (1981) provides for final and binding arbitration of grievances and does not explicitly or by implication require the grievance arbitrator to consider budgeting restraints on the public employer. Because the PER Act does not require a grievance arbitrator to protect the county's budget, I do not believe we can fairly infer that the county simply wanted the "except for" clause to provide similar budget protection in earlier steps of the grievance procedure.

I believe that instead of affirming the trial court's grant of summary judgment, we should reverse and remand this case for trial of the genuine issues of fact presented by the summary judgment record.

HARRIS, McCORMICK, and CARTER, JJ., join this dissent and concurrence in part.