**SERGEANT BLUFF–LUTON EDUCATION ASSOCIATION, Lorraine Stodden and Lois Moore, Appellants,**

v.

**SERGEANT BLUFF–LUTON COMMUNITY SCHOOL DISTRICT, Appellee.**

No. 62604.

Supreme Court of Iowa.

Aug. 29, 1979.

Charles E. Gribble, of Dreher, Wilson, Adams & Jensen, Des Moines, for appellants.

Gerald M. Kraai, of Shull, Marshall & Marks, Sioux City, for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McCORMICK and LARSON, JJ.

LARSON, Justice.

The Sergeant Bluff-Luton Education Association and teachers Lorraine Stodden and Lois Moore appeal from an equity decree of the district court refusing to enforce an arbitrator's ruling which had ordered the district to advance these individual teachers on the salary schedule incorporated in a collective bargaining contract. This action is brought pursuant to our Public Employment Relations Act, chapter 20, The Code 1977. We reverse the trial court and order the arbitrator's award enforced, but affirm as to the appellants' request for attorney's fees.

The teachers association is an "employee organization" certified under section 20.15 to represent teachers of the district in collective bargaining. The teachers filed a grievance alleging an erroneous interpretation or application of the agreement by the district in that the agreement prescribed salary levels for employees based upon all years of experience and educational achievement and teachers Moore and Stodden were not being paid accordingly. As the final step in the grievance process, the teachers invoked arbitration. The provision of the collective bargaining agreement dealing with arbitration states, in part:

> The arbitrator shall not amend, modify, nullify, or add to the provisions of this agreement. The arbitrator's decision will be final and binding upon both parties unless he/she has exceeded the authority as listed above.

This provision is consistent with the statutory authorization for grievance procedures, section 20.18, which provides in part:

> Negotiated procedures may provide for binding arbitration of public employee grievances and of disputes over the interpretation and application of existing agreements. An arbitrator's decision on a grievance may not change or amend the terms, conditions or applications of the collective bargaining agreement.

The arbitrator found in favor of the teachers, ordering their advancement on the salary schedule and ordering additional pay retroactive to April 29, 1977, the date on which the arbitrator found they first discovered they were "incorrectly placed" on the salary schedule. The district refused to abide by the arbitrator's decision; the association and teachers thereupon brought an action in equity to "enforce" the arbitrator's award, with interest, and to recover

attorney's fees from the district. The district court refused to enforce the arbitrator's decision.

The posture of this case raises several issues. (1) Is there a cognizable action under our law to "enforce" an arbitrator's decision; (2) what is the scope of judicial review; (3) is the award here enforceable; and (4) are attorney's fees allowable in this action as part of the court costs?

I. *Action to enforce the agreement.* The petition in district court, filed in equity, states the action is brought "to enforce the terms of a collective bargaining agreement *and an arbitrator's award* and is brought pursuant to section 20.17(6), *Code of Iowa* (1977)." (Emphasis added.) The reference to subparagraph (6) was apparently intended to be to subparagraph (5), which provides:

> Terms of any collective bargaining agreement may be enforced by a civil action in the district court of the county in which the agreement was made upon the initiative of either party.

This statute provides for an action to enforce an "agreement;" it does not provide express authority to enforce an arbitrator's award. The absence of language in the statute to permit enforcing or vacating an arbitrator's award is significant because courts have traditionally regarded the arbitration process as an infringement upon their role as decision-makers. This court has, in fact, held agreements to submit to arbitration unenforceable. *See e. g., Prader v. National Masonic Accident Association,* 95 Iowa 149, 161, 63 N.W. 601, 605 (1895) ("[A] general provision by which the parties to an agreement in terms bind themselves to submit to arbitration all matters of dispute which may thereafter arise, and making the arbitration final, will not deprive the courts of their appropriate jurisdiction, nor be enforced by them."). *See also Joseph L. Wilmotte & Co. v. Rosenman Bros.,* 258 N.W.2d 317, 325 (Iowa 1977) and *County of Jefferson v. Barton-Douglas Contractors, Inc.,* 282 N.W.2d 155, 157 (Iowa 1979) (recognizes unfavorable common-law view of executory arbitration

agreements). The United States Supreme Court, as late as 1957, indicated that some doubt existed whether federal substantive law would permit enforcement of executory agreements to arbitrate, absent statutory authority. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456, n.7, 77 S.Ct. 912, 917, 1 L.Ed.2d 972, 980 (1957). In view of that background and the lack of specific language in Section 20.17(5) on the enforceability of arbitration awards, it could be argued that this section was not meant to authorize such an action. However, we conclude this section provides a basis for an action to enforce or vacate an arbitrator's award for two reasons.

First, this is consistent with the interpretation given by federal courts to a similar federal statute. "[J]udicial interpretations of identical or equivalent statutory language in other jurisdictions are entitled to unusual respect and deference and will usually be followed if sound, reasonable, and in harmony with justice and public policy." *Young v. City of Des Moines,* 262 N.W.2d 612, 619 (Iowa 1978). Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry . . . may be brought in any district court of the United States . . . .

This section was held to provide statutory authority in the federal courts to compel specific performance of collective bargaining agreements in *Textile Workers Union.* It has also been used to seek enforcement or vacation of arbitrators' awards. *See, e. g., United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (suit by union to enforce award by arbitrator); *Fabricut, Inc. v. Tulsa General Drivers Local 523,* 597 F.2d 227 (10th Cir. 1979) (suit by employer under section 301 to set aside arbitrator's ruling; ruling held binding).

Second, this interpretation of section 20.17(5) more clearly effectuates the legislative policy favoring arbitration and gives effect to the procedure for which the par-

ties have bargained. The General Assembly's favorable view of arbitration is evident from the P.E.R. Act. Not only does it authorize binding arbitration of grievances, it also provides for binding arbitration of negotiation impasses. *See* § 20.22(1).

II. *Scope of review of arbitrator's award.* In determining the proper extent of judicial scrutiny of arbitration awards under our new P.E.R. Act, it is again appropriate to consider the federal practice. The Labor Management Relations Act states the arbitration process is to be favored in resolving labor-management disputes. Section 203(d) of that act, 29 U.S.C. § 173(d), provides:

> (d) Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.

In recognition of that philosophy, the United States Supreme Court adopted a narrow scope of judicial involvement in the process in the *Steelworkers* trilogy.[1] Citing the trilogy's *Enterprise Wheel* case, we have said that "[t]he function of the courts is strictly limited to a determination of the arbitrator's authority and the existence of an arbitrable dispute. Ordinarily courts may not inquire into the merits of the decision itself." *Teamsters Local 394 v. Associated Grocers of Iowa Cooperative, Inc.,* 263 N.W.2d 755, 757 (Iowa 1978). The *Teamsters* case and the *Steelworkers* trilogy all involved private-sector contracts. However, we have alluded to the same concept in a prior P.E.R.A. case, *West Des Moines Community School District v. West Des Moines Educational Support Personnel,* 265 N.W.2d 625, 626 (Iowa 1978) (per curiam), where we said that "it is clear the arbitrator merely interpreted the [collective bargaining] contract in a way the school dis-

trict would not and in a manner we might not. But this does not render the arbitrator's interpretation an alteration."

■ Despite the fact there is no equivalent of the forceful statement in the federal statute favoring arbitration, we conclude this was the intent of the P.E.R.A. provision for binding arbitration. There are several reasons to favor a broad scope of arbitrator authority and therefore a corresponding restriction of judicial involvement in the process. Arbitration is a faster process, draws on the expertise of persons in the field,[2] and is less expensive. To allow a court to "second guess" an arbitrator by granting a broad scope of review would nullify those advantages. Most important, limited judicial review gives the parties what they have bargained for—binding arbitration, not merely arbitration binding if a court agrees with the arbitrator's conclusion. *See American Manufacturing,* 363 U.S. at 567, 80 S.Ct. at 1346, 4 L.Ed.2d at 1406. As stated in *Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. at 1362, 4 L.Ed.2d at 1429, a plenary review by a court of the merits of a dispute under a collective bargaining agreement would "make meaningless the provisions [of the agreement] that the arbitrator's decision is final, for in reality it would almost never be final." We adopt the rationale of the *Steelworkers* cases for even though this is a public employee agreement we have discovered no tenable basis for distinction on that ground alone.

■ The threshold question in reviewing an arbitrator's award is to determine whether the issue in dispute is one which the parties had agreed to settle by arbitration. A broad approach to arbitrability was announced by the *Steelworkers* trilogy:

> An order to arbitrate the particular grievance should not be denied unless it

1. *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

2. *See American Mfg.,* 363 U.S. at 567, 80 S.Ct. at 1346, 4 L.Ed.2d at 1406: "In the context of the plant or industry, the grievance may assume proportions of which judges are ignorant." *See also Enterprise Wheel,* 363 U.S. at 596, 80 S.Ct. at 1360–61, 4 L.Ed.2d at 1427–28.

may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417–18. The school district here does not contend that the issue of these teachers' placement on the salary schedule is not within the scope of the agreement to arbitrate.

■ Once arbitrability of the issue is established, the sole question to be determined by the court on review is whether the arbitrator's award "drew its essence" from the collective bargaining agreement. It is not the function of the court to determine whether the arbitrator has resolved the grievance correctly. *Aircraft Mechanics Fraternal Assn. v. Ozark Air Lines, Inc.,* 597 F.2d 1155, 1157 (8th Cir. 1979), citing *Enterprise Wheel.* Determination of this issue is discussed more fully in the following division.

III. *Enforceability of the Award.* The arbitration hearing in this case established the following facts. Lois Moore was hired as a teacher in 1975, and Lorraine Stodden in 1965. At the time of their hiring, both were placed on the then-existing salary schedule at steps lower than those commensurate with their years of experience. That was still the situation after the collective bargaining agreement became effective. That agreement provided, as to salaries, that:

> The basic salaries of teachers covered by this agreement shall be set forth in Appendix A of this agreement.
>
> To be eligible for movement to the next increment step on the salary schedule, a teacher must work one hundred and twenty (120) days. Adjustment to the next higher education level shall be paid from the first day of the new school year
>
> . . . .

Appendix A contained a salary schedule divided into educational level "lanes." Each lane was subdivided into incremental "steps." The association and teachers argued that this format coupled with the ad-vancement for each year of experience at Sergeant-Bluff required that every teacher receive a step of credit for every year of previous teaching experience, including those accumulated before coming to Sergeant-Bluff. They sought support for this interpretation of the salary provisions from the fact that all teachers hired after the effective date of the agreement were given credit for every year of experience and the board's admission that this was the present policy.

It was also established at the arbitration hearing that during negotiations for the master contract the teachers association had proposed, and the district had refused, a provision for initial placement of teachers on the salary schedule at steps commensurate with years of experience. The district contended the absence of this proposal from the final agreement established the nonexistence of this benefit. The association countered that it was omitted because it was not necessary; the agreement provided the benefit anyway, and such a provision would be redundant. The school district relied on *Torrington Co. v. Metal Products Workers Union,* 362 F.2d 677 (2d Cir. 1966). The issue in *Torrington* was whether the company was required to grant workers time off with pay to vote, a policy the company had followed for twenty years. In 1963 it notified its workers that it would abandon the policy and indicated at the beginning of negotiations for a new contract that it would not reestablish the voting policy. The union incorporated the voting policy in its written demands, but the final contract contained no provision for it. The arbitrator ruled that in view of this firmly entrenched policy it was incumbent on the company to negotiate a contrary contract term. The district court vacated the award and was affirmed by the second circuit on the basis that the award constituted an impermissible addition to the contract, which prohibited the arbitrator from adding to, deleting from or modifying its terms. In so doing the court said:

> While it may be appropriate to resolve a question never raised during negotiations

on the basis of prior practice in the plant or industry, it is quite another thing to assume that the contract confers a specific benefit when that benefit was discussed during negotiations but omitted from the contract.

362 F.2d at 681.

The arbitrator here recognized the principles of *Torrington* in concluding that "[i]t would appear that the failure of the teachers to obtain the benefit [of placement on the salary schedule commensurate with years of experience] during negotiations now precludes them from claiming it." He then expressed doubt as to whether it was determinative on the matter of interpretation by stating:

> However, there is a relatively persuasive counter argument to consider. It would appear to be an anomaly to conclude the Board would still retain power to place teachers at steps which are not commensurate with their experience after the Board agreed to a provision which details the Lanes and Steps of teacher salaries.

After discussing the district's application of the salary schedule to all teachers hired after the effective date of the master contract and statements by the board's president confirming this was in fact the policy of the board, the arbitrator discussed other interpretation arguments presented and concluded:

> All of this reasoning has in effect caused the Arbitrator to not accede to the arguments of either party. The case must by necessity turn on other matters since the history of the negotiations, the ambiguous and silent nature of the Agreement and the equally compelling arguments of both parties dictate that no reasonable result can be predicated on this axis.

He then "turn[ed] to the question of management rights" and the correlative "doctrine of implied obligations, i. e., that [the district] had good reason to act as it did." He concluded that all other teachers were placed appropriately upon the salary schedule, except for the two grievants, who had been "penalized or discriminated against for no good reason except for the mere fact they were historically lower than the commensurate years of experience because at the times they were hired they lacked bargaining powers to secure a better initial placement."

Did the arbitrator, by asserting an inability to interpret the salary provisions of the contract itself and relying upon the concepts of implied management rights and obligations, fail to draw the award from the "essence of the agreement" and thereby impose his own "brand of industrial justice?" If so, a court is required under the *Steelworkers* trilogy, to refuse enforcement of the award. *See Enterprise Wheel*, 363 U.S. at 597, 89 S.Ct. at 1361, 4 L.Ed.2d at 1428. The district court apparently concluded that the award was unenforceable for that reason, stating that "[t]he arbitrator's duty was to interpret the terms of the contract, in effect, not to write a new one, and it is this Court's opinion, therefore, that he went completely beyond his authority, and his findings should not be enforced or sustained." The district court also placed heavy emphasis on the bargaining history and *Torrington*, saying, "the employees are using the usual ploy of trying to achieve by arbitration what they failed to accomplish during the bargaining period."

■ We find the reasoning of *Torrington* unpersuasive. Its emphasis on negotiations preceding the collective bargaining agreement is in reality an attempt to discern intent of the contracting parties. It would be properly considered by an arbitrator in interpreting a collective bargaining agreement, but it is an impermissible consideration for a reviewing court. Such an examination of the underlying negotiations, bearing as it must on contract interpretation and therefore the merits of the controversy, would constitute an encroachment upon the authority of the arbitrator contrary to the holdings of the *Steelworkers* trilogy and its progeny. *See Warrior & Gulf.* Thus, we reject the principle that awards based upon proposals raised but not expressly adopted in a final agreement are beyond the arbitrator's jurisdiction. The proposals might, as

claimed here, be deemed unnecessary in view of other language. They might have been omitted by oversight, in which case an arbitrator should be free to incorporate them as part of the essence of the agreement.

We also believe the trial court's finding that the arbitration award was not drawn from the essence of the agreement is erroneous. The "essence" of a collective bargaining agreement is an extremely broad concept. It requires a casting aside of traditional views of contract law in favor of a multitude of other considerations, including not only the written and unwritten agreements, themselves, but also the practices of the parties or the industry in general. In *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the court, recognizing the unique character of collective bargaining agreements, held a successor employer may be bound by its terms, even though it was not a party to the agreement. The court said:

> While the principles of law governing ordinary contracts would not bind to a contract an unconsenting successor to a contracting party, a collective bargaining agreement is not an ordinary contract.

*Id.,* 376 U.S. at 550, 84 S.Ct. at 914, 11 L.Ed.2d at 904–05. The "essence of the agreement" was discussed in *Warrior & Gulf,* as follows:

> The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment.

363 U.S. at 581–82, 80 S.Ct. at 1352, 4 L.Ed.2d at 1417. The essence of the agreement even draws upon other vaguely defined concepts of the particular industry having their roots in considerations of fairness, reasonableness and practicality. For example, *Warrior & Gulf* refers to such matters as "productivity" of a particular interpretation, its effect on the morale of the shop, and its effect in increasing or diminishing the tension of the employees. *Id.* The essence of the agreement has been held to even transcend the terms of the written agreement to allow benefits after expiration of the contract itself. *See, e. g., Nolde Brothers, Inc. v. Local No. 358 Bakery and Confectionary Workers Union,* 430 U.S. 243, 251, 97 S.Ct. 1067, 1072, 51 L.Ed.2d 300, 308 (1977) (duty to arbitrate under terms of collective bargaining contract held to survive its termination).

Examination of these principles leads us to conclude that, while the arbitrator asserted an inability to interpret the contract and a reliance upon management rights and duties, his decision was based upon the practices of the parties, or the "industrial common law" as shown by the school district's application of the salary provisions to all of its other teachers. This is part of the "essence of the agreement." While we might, as the trial court did, reach a different conclusion in dealing with these teachers' complaints, we are not free to do so. Once it is determined the arbitrator's award is drawn from the essence of the agreement, our consideration of the relative merits of the controversy must terminate. We conclude the arbitrator's award was based upon the essence of the collective bargaining agreement and that the trial court therefore erred in refusing to enforce it.

IV. *Allowance of attorney's fees.* Having resolved the substantive issue adversely to the district, we must determine whether it should pay the attorney's fees claimed by the grievants on the basis the district had failed to either implement the award or commence an action to set it aside. Federal cases have said such an allowance may be made, in the discretion of the district court, if a party has acted " 'in bad faith, vexatiously, wantingly, or for oppressive reasons.' " *Fabricut, Inc.,* 597 F.2d at 230. Here, the grievants requested

an allowance of fees in their petition, but the decree was silent on the issue, and no application was made under Rule of Civil Procedure 179 to enlarge or amend it. We conclude the trial court therefore denied the request. No claim is made that the district court abused its discretion. Furthermore, our law is even more restrictive than the federal; we require proof of bad faith. *Teamsters,* 263 N.W.2d at 760. Bad faith on the part of the district was not alleged here. We conclude that the trial court was correct in refusing to allow attorney's fees.

We reverse the district court as to that part of the decree refusing to enforce the arbitrator's award and remand for entry of an order of enforcement of it. We affirm as to the refusal of the court to order attorney's fees to be paid by the district.

AFFIRMED IN PART, REVERSED IN PART.

All Justices concur except REYNOLD-SON, C. J., who concurs in the result.