**CEDAR RAPIDS ASSOCIATION OF FIRE FIGHTERS, LOCAL 11, Appellee,**

v.

**CITY OF CEDAR RAPIDS, IOWA, Appellant.**

**No. 96–1306.**

Supreme Court of Iowa.

Feb. 18, 1998.

William Wright, Cedar Rapids, for appellant.

Charles E. Gribble of Roehrick, Hulting, Blumberg, Kirlin & Krull, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

SNELL, Justice.

This case involves the review by the district court of an arbitrator's decision involving time trades by city fire fighters. The arbitrator held that under the agreement between the City and the fire fighters' union, the City had the right to approve or disapprove time trades among fire fighters. On appeal to the district court, a motion for summary judgment was granted to the fire fighters' association. The City of Cedar Rapids has appealed. We reverse and remand.

## I. Background Facts and Proceedings

The City of Cedar Rapids and the Cedar Rapids Association of Professional Fire Fighters, Local 11 (the Association), have been parties to a collective bargaining agreement since 1977. The collective bargaining agreement contains the following provision in section 11.5.b:

> An employee may have the privilege to change a work day with another employee on a different shift upon their mutual agreement and with the approval of the employee's company officer and district chief. . . .

Under the parties' past practice, these "time trades" were granted as a matter of course. Prior to the beginning of the 1994–95 contract year, the City promulgated restrictions on time trades that would (1) preclude time trades with less than twenty-four hours or more than ten days notice, (2) preclude time trades of more than two consecutive days, and (3) preclude time trades for more than one day before or after a vacation.

The City thereafter denied three requests for time trades which did not comply with the above restrictions. On July 21, 1994, and August 8, 1994, the Association filed three grievances on behalf of the fire fighters protesting denial of the time trades. The City denied all three grievances at Steps I and II of the grievance procedure set forth in the parties' agreement. Pursuant to section 9.3.c of the agreement the Association filed for binding arbitration of the three grievances. The grievances were consolidated for hearing before the parties' chosen arbitrator, Christine D. Ver Ploeg.

On September 21, 1995, the arbitrator issued her award finding "that the City has the right under the clear and unambiguous language of Subsection 11.5.b to approve or

disapprove time trade requests." She found, however, that the City failed to give these three fire fighters adequate notice of the policy change. Consequently, she sustained their grievances on the basis of detrimental reliance on the former policy. Although noting the parties'. past practice had been to freely permit time trades, the arbitrator concluded:

[I]t is almost universally accepted that past practice is a helpful, and sometimes even determinative, tool for interpreting and shaping ambiguous contract language. Here, the [language of] 11.5.b is clear and unambiguous. Thus, it is not necessary to address the question of past practice because past practice is not needed to determine the contract's literal meaning.

On January 5, 1996, the Association filed a petition in district court to vacate that portion of the arbitrator's award holding that section 11.5.b unambiguously gives the City the right to approve or disapprove of time trades. The City filed a motion for summary judgment and the Association filed a cross-motion for summary judgment. The arbitrator's decision sustaining the three fire fighters' grievances was not appealed.

Following a hearing, the district court entered an order denying the City's motion for summary judgment and granting the Association's motion. The court rejected the City's claim that the ninety-day statute of limitations contained in Iowa Code section 679A.12 should be applied to the Association's petition to vacate the arbitration award. The court concluded the past practice of liberally granting time trades had become integrated into the parties' contract and should have been considered by the arbitrator. The court further ruled:

I conclude that the arbitration award was not drawn from the essence of the collective bargaining agreement because past practice was disregarded. The decision modified the agreement existing between the parties, and therefore exceeded the limits of authority imposed by the agreement.

## II. Issues on Appeal

The City contends the district court erred in ruling (1) the arbitrator's award did not draw its essence from the parties' collective bargaining agreement; (2) the arbitrator exceeded her authority allowed under the agreement; and (3) the ninety-day statute of limitations contained in section 679A.12 did not apply to the Association's petition to vacate.

## III. Scope of Review

Our review is of the district court's ruling sustaining the Association's motion for summary judgment and vacating part of a grievance arbitration award granted by the arbitrator. At the same time the district court denied the City's motion for summary judgment. Our scope of review is for correction of errors at law. Iowa R.App. P. 4.

## IV. Analysis of Applicable Law

Our prior case law has clearly circumscribed our function and breadth of review. The defining case on this issue is *Sergeant Bluff–Luton Education Ass'n v. Sergeant Bluff–Luton Community School District,* 282 N.W.2d 144 (Iowa 1979). There we adopted the view established by federal cases in interpreting our Public Employment Relations Act, Iowa Code chapter 20 (1977). We said:

In determining the proper extent of judicial scrutiny of arbitration awards under our new P.E.R. Act, it is again appropriate to consider the federal practice. The Labor Management Relations Act states the arbitration process is to be favored in resolving labor-management disputes. Section 203(d) of that act, 29 U.S.C. § 173(d), provides:

(d) Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.

In recognition of that philosophy, the United States Supreme Court adopted a narrow scope of judicial involvement in the process in the *Steelworkers* trilogy.. Citing the trilogy's *Enterprise Wheel* case, we have said that "[t]he function of the courts

is strictly limited to a determination of the arbitrator's authority and existence of an arbitrable dispute. Ordinarily courts may not inquire into the merits of the decision itself." *Teamsters Local 394 v. Associated Grocers of Iowa Cooperative, Inc.,* 263 N.W.2d 755, 757 (Iowa 1978). The *Teamsters* case and the *Steelworkers* trilogy all involved private-sector contracts. However, we have alluded to the same concept in a prior P.E.R.A. case, *West Des Moines Community School District v. West Des Moines Educational Support Personnel,* 265 N.W.2d 625, 626 (Iowa 1978) (per curiam), where we said that "it is clear the arbitrator merely interpreted the [collective bargaining] contract in a way the school district would not and in a manner we might not. But this does not render the arbitrator's interpretation an alteration."

Despite the fact there is no equivalent of the forceful statement in the federal statute favoring arbitration, we conclude this was the intent of the P.E.R.A. provision for binding arbitration. There are several reasons to favor a broad scope of arbitrator authority and therefore a corresponding restriction of judicial involvement in the process. Arbitration is a faster process, draws on the expertise of persons in the field, and is less expensive. To allow a court to "second guess" an arbitrator by granting a broad scope of review would nullify those advantages. Most important, limited judicial review gives the parties what they have bargained for—binding arbitration, not merely arbitration binding if a court agrees with the arbitrator's conclusion. *See American Manufacturing,* 363 U.S. at 567, 80 S.Ct. at 1346, 4 L.Ed.2d at 1406. As stated in *Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. at 1362, 4 L.Ed.2d at 1429, a plenary review by a court of the merits of a dispute under a collective bargaining agreement would "make meaningless the provisions [of the agreement] that the arbitrator's decision is final, for in reality it would almost never be final." We adopt the rationale of the *Steelworkers* cases for even though this is a public employee agreement we have discovered no

tenable basis for distinction on that ground alone.

*Sergeant Bluff–Luton Educ. Ass'n,* 282 N.W.2d at 147 (footnotes omitted).

■ The first issue to determine is whether the parties agreed to arbitration. Here they clearly did. Next *Sergeant Bluff* instructs:

Once arbitrability of the issue is established, the sole question to be determined by the court on review is whether the arbitrator's award "drew its essence" from the collective bargaining agreement. It is not the function of the court to determine whether the arbitrator has resolved the grievance correctly.

*Id.* at 148.

To understand the term "essence of the agreement" we said:

We also believe the trial court's finding that the arbitration award was not drawn from the essence of the agreement is erroneous. The "essence" of a collective bargaining agreement is an extremely broad concept. It requires a casting aside of traditional views of contract law in favor of a multitude of other considerations, including not only the written and unwritten agreements, themselves, but also the practices of the parties or the industry in general. In *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the court, recognizing the unique character of collective bargaining agreements, held a successor employer may be bound by its terms, even though it was not a party to the agreement. The court said:

While the principles of law governing ordinary contracts would not bind to a contract an unconsenting successor to a contracting party, a collective bargaining agreement is not an ordinary contract. *Id.,* 376 U.S. at 550, 84 S.Ct. at 914, 11 L.Ed.2d at 904–05. The "essence of the agreement" was discussed in *Warrior & Gulf,* as follows:

The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and

the shop—is equally a part of the collective bargaining agreement, although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. [*United Steelworkers v. Warrior & Gulf Navigation Co.,*] 363 U.S. at 581–82, 80 S.Ct. at 1352, 4 L.Ed.2d at 1417. The essence of the agreement even draws upon other vaguely defined concepts of the particular industry having their roots in considerations of fairness, reasonableness and practicality. For example, *Warrior & Gulf* refers to such matters as "productivity" of a particular interpretation, its effect on the morale of the shop, and its effect in increasing or diminishing the tension of the employees. *Id.* The essence of the agreement has been held to even transcend the terms of the written agreement to allow benefits after expiration of the contract itself. *See, e.g., Nolde Brothers, Inc. v. Local No. 358 Bakery and Confectionery Workers Union,* 430 U.S. 243, 251, 97 S.Ct. 1067, 1072, 51 L.Ed.2d 300, 308 (1977) (duty to arbitrate under terms of collective bargaining contract held to survive its termination).

*Id.* at 150.

Based on this analysis of arbitration law, we upheld the arbitrator's decision by saying:

Examination of these principles leads us to conclude that, while the arbitrator asserted an inability to interpret the contract and a reliance upon management rights and duties, his decision was based upon the practices of the parties, or the "industrial common law" as shown by the school district's application of the salary provisions to all of its other teachers. This is part of the "essence of the agreement." While we might, as the trial court did, reach a different conclusion in dealing with these teachers' complaints, we are not free to do so. Once it is determined the arbitrator's award is drawn from the essence of the agreement, our consideration of the relative merits of the controversy must terminate. We conclude the arbitrator's award was based upon the essence of the collective bargaining agreement and that the trial court therefore erred in refusing to enforce it.

*Id.*

This construction of our law was confirmed in *Iowa City Community School District v. Iowa City Education Ass'n,* 343 N.W.2d 139 (Iowa 1983). There we again upheld the arbitrator's decision in finding that it was drawn from "the essence of the agreement." In describing the role of the arbitrator, we said:

Put most simply, the arbitrator is the parties' officially designated "reader" of the contract. He (or she) is their joint *alter ego* for the purpose of striking whatever supplementary bargain is necessary to handle the anticipated unanticipated omissions of the initial agreement. Thus, a "misinterpretation" or "gross mistake" by the arbitrator becomes a contradiction in terms. In the absence of fraud or an overreaching of authority on the part of the arbitrator, he is speaking for the parties, and his award is their contract. That is what the "final and binding" language of the arbitration clause says. In sum, the arbitrator's award should be treated as though it were a written stipulation by the parties setting forth their own definitive construction of the labor contract. (emphasis in original).

St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and Its Progeny,* 75 Mich. L.Rev. 1137, 1140 (1977).

. . . .

... The United States Supreme Court has summarized the role of courts in reviewing arbitration awards:

Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of

equity will not set it aside for error, either in law or fact. A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation.

*Burchell v. Marsh,* 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96, 99 (1855).

*Iowa City Community Sch. Dist.,* 343 N.W.2d at 142–43.

Further limiting our scope of review we said:

Courts do not presume that an arbitrator has exceeded his authority merely because they disagree with the arbitrator's reasoning:

An arbitrator's award does "draw its essence from the collective bargaining agreement" so long as the interpretation can in some rational manner be derived from the agreement, "viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principle of contract construction and the law of the shop, may a reviewing court disturb the award." [citations omitted]. Neither the correctness of the arbitrator's conclusion nor the propriety of his reasoning is relevant to a reviewing court, so long as his award complies with the aforementioned standards to be applied by the reviewing court in exercising its limited function. [citation omitted].

*Amoco Oil Co. v. Oil, Chemical & Atomic Workers International Union, Local 7–1,* 548 F.2d 1288, 1294 (7th Cir.), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977).

*Id.* at 144.

## V. Arbitrator's Analysis

### A. Past Practices

■ The City contends that the district court erred in concluding that the arbitrator's decision was not drawn from the essence of the agreement. The court drew this result from its conclusion that the arbitrator

ignored the past practice of the parties of recognizing time trading by fire fighters. Our examination of the arbitrator's decision shows that she not only recognized the practice, but discussed it at length, noting that past practice is accepted as a tool for interpreting ambiguous contract language. However, she found the past practice here was a non-factor because section 11.5.b of the collective bargaining agreement is clear and unambiguous. Nevertheless, she did apply the past practice for the sole purpose of supporting her decision to sustain the three fire fighters' grievances where the City had failed to notify them of a new restriction that directly contravened years of past practice. Moreover, the arbitrator found that the City had never waived its right to exercise its discretion in approving or disapproving time trade requests. Far from waiving its right, the City had in a previous arbitration hearing successfully fought to retain its right as a necessary management prerogative. The arbitrator further found that during the negotiations on the 1994–95 labor contract, the City specifically repudiated any effect of the past practice of time trading. The City's written notice to the Association stated:

This is to inform you, so there is no doubt, of the City's position regarding time-trades in the labor Agreement beginning July 1, 1994.

Unless specific language is included to allow partial day time-trades none will be allowed. It is also the intent of the department to continue to exercise its right to approve/disapprove all time-trades.

This written position is intended to make very clear to you and any third party that regardless of what past practice on time-trades has been, there is nothing implied under time-trades except exactly what the language says.

The arbitrator thoroughly considered the evidence of past practices and rejected the argument that they had been integrated into the contract and thereby altered the original contract language of section 11.5.b.

### B. Essence of the Agreement

The City claimed, and the arbitrator agreed, that under section 11.5.b the City has

the unrestricted right to approve or disapprove fire fighters' time trades. This is because under section 11.5.b a work day change may be made only with the approval of the employee's company officer and chief, who uncontestedly represent the City as management officers.

Addressing the Association's arguments, the arbitrator said:

I have reviewed the evidence and arguments on this question and remain confused by the Association's seemingly contradictory assertions that (1) there is no ambiguity, and (2) the provision necessarily incorporates unwritten practices that would restrict the City's right to exercise what is on its face an unrestricted right.

Since the parties first collectively bargained this provision in 1977, the contract has always referred to a time trade as a "privilege" which has been conditioned upon three things: (1) the mutual Agreement of the employees trading shifts, (2) the approval of the employee's company officer, and (3) the approval of the District Chief (now, "Chief or his designee.") This language on its face imposes no limitation on the City's right to withhold approval, nor is any such limitation found elsewhere in the parties' Agreement.

Thus, I know of no way in which to interpret the Agreement's language to pose any limitation on the City's right to determine for itself whether time trade requests shall be granted.

In further drawing its decision from the "essence of the agreement," the arbitrator considered the facts, reasoning and results of three previously arbitrated disputes involving the City and its employees. In each it was found that there was little bearing on the issue in this case and the conclusions were distinguishable. The arbitrator also addressed the Association's assertion that a restriction on the employees' time trades should be achieved through a change by negotiation or arbitration. Rejecting this idea, the arbitrator stated that she could not envision contract language any stronger than the City already had under section 11.5.b. Further, the arbitrator held that article 9 of the parties' agreement denied her the authority to "add to, subtract from, disregard or in any way modify the terms of the agreement."

Although the City's discretion in approving time trade requests is great, the arbitrator recognized that it is not unfettered. The City may not reject requests for reasons that are arbitrary, capricious, or discriminatory.

The arbitrator's decision was thorough in its analysis. The arbitrator considered the relevant terms of the contract, the past practices of the parties, indicia of the parties' intentions, prior arbitration awards, a fact finding report, and the City's notice of intention to repudiate past practices pertaining to time trades. The arbitration decision was clearly drawn from the essence of the collective bargaining agreement.

C. Finality

■ We have held that it matters not whether we disagree with an arbitrator's interpretation or reasoning. Were we to do so, it would not even mean that the arbitrator exceeded his or her authority. *City of Des Moines v. Central Iowa Pub. Employees Council,* 369 N.W.2d 442, 446 (Iowa 1985); *Iowa City Community Sch. Dist.,* 343 N.W.2d at 144–45; *West Des Moines Community Sch. Dist. v. West Des Moines Educ. Support Personnel,* 265 N.W.2d 625, 626 (Iowa 1978).

VI. Decision

The arbitrator's interpretation and decision were clearly within the law as we have set out in our prior opinions. The district court erred in concluding otherwise; the City's summary judgment motion should have been granted.

Given our conclusion, we need not address the issue raised by the City that the Association's appeal to the district court was time barred by a statute of limitations.

We reverse and remand for entry of judgment for the City affirming the decision of the arbitrator.

**REVERSED AND REMANDED.**