# IN THE COURT OF APPEALS OF IOWA

No. 21-0530
Filed January 27, 2022

**BELMOND-KLEMME COMMUNITY SCHOOL DISTRICT,**
　　Applicant-Appellee,

**vs.**

**BELMOND-KLEMME EDUCATION ASSOCIATION and JODI TURNER,**
　　Respondents-Appellants,

_____

　　Appeal from the Iowa District Court for Wright County, James M. Drew, Judge.

　　Belmond-Klemme Education Association and Jodi Turner appeal a district court order vacating an arbitration award. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

　　Becky S. Knutson of Dentons Davis Brown P.C., Des Moines, for appellants.

　　Ann M. Smisek and Elizabeth A. Heffernan of Ahlers & Cooney, P.C., Des Moines, for appellee.

　　Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ., but decided by Vaitheswaran, P.J., Tabor, J., and Mullins, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**MULLINS, Senior Judge.**

Belmond-Klemme Education Association (Association) and Jodi Turner appeal an adverse district court ruling on Belmond-Klemme Community School District's (District) application to vacate or modify an arbitration award relating to a grievance and the Association and Turner's motion for summary judgment on the application. The Association and Turner generally argue the court "erred in substituting its judgment on the arbitrability of the grievance for the judgment of the arbitrator."

## I. Background

Turner is a teacher at the District and a member of the Association, which is an "employee organization" within the meaning of Iowa Code section 20.3(4) (2019). Both the Iowa teaching standards under Iowa Code section 284.3 and the standards of professional conduct and ethics under Iowa Administrative Code chapter 282, rule 25.3 apply to Turner. In January 2017, the District and Association ratified a collective bargaining agreement (CBA), which would be effective from July 1, 2017 through June 30, 2019.

On June 5, 2019, during the contract period, secondary principal Greg Fisher presented Turner with a letter regarding his "findings and conclusions related to [his] interview of [Turner] regarding [her] job performance with the school district and an incident that occurred in the high school library and hallways . . . on Monday, May 20, 2019." The letter noted Fisher and Turner met on "May 31, 2019 to discuss allegations against [Turner] regarding alleged violations of school board policy, inappropriate interaction with students, and insufficient supervision of students entrusted in [her] care." Turner was alleged to have left her homeroom

students unsupervised in her classroom to use the copying machine in the library, where she scolded two students about low grades, at least one in front of others, contrary to confidentiality surrounding grades and academic progress. After leaving the library, Turner had separate conversations with two other teachers, one of which became "loud and heated," all while her students remained unsupervised in her classroom.

Based on the foregoing chain of events and others, Fisher found Turner's performance to be unsatisfactory in four areas: (1) inappropriate and disrespectful treatment of students,[1] (2) failure to supervise students,[2] (3) insubordination,[3] and (4) misuse of a leadership role.[4] As to areas one and two, Fisher found Turner's performance in violation of teaching standard six involving "competence in classroom management," as well as professional conduct and ethics standard six involving professionalism as to area one and protecting health and safety of students or creating conditions harmful to learning as to area two. *See* Iowa Code § 284.3(1)(f); Iowa Admin. Code r. 282-25.3(6)(c), (d). As to area three, Fisher found Turner's performance in violation of teaching standard eight involving fulfillment of "professional responsibilities established by the school district," as

---

[1] This finding related to the foregoing exchange with one or more students in the library, an incident in March 2018 allegedly involving Turner escalating an exchange with a student and making inappropriate and unnecessary comments, and an incident in March 2019 involving Turner allegedly berating a student "in a loud and angry manner."

[2] This finding related to multiple instances of Turner leaving her students unattended.

[3] This finding related to ignoring repeated warnings and disregarding student welfare procedures.

[4] This finding related to the "loud and heated" exchange between Turner and another teacher on May 20, 2019.

well as professional conduct and ethics standard eight involving incompetence. *See* Iowa Code § 284.3(1)(h); Iowa Admin. Code r. 282-25.3(8). As to the fourth area, Fisher did not identify what teaching or professional conduct and ethic standard Turner violated.

As corrective action, Fisher notified Turner she would be placed "on the 'Intensive Assistance' track of the Iowa teacher evaluation system for the 2019–2020 school year," which would involve "the provision of organizational support and technical assistance" aimed at remedying the deficiencies. Turner's performance would be under review for the school year, and a decision would be rendered in January 2020 as to Turner's compliance with teaching standards and extension of Turner's teaching contract. The letter made various recommendations to attain compliance and advised the letter was a written disciplinary warning that would be placed in Turner's personnel file.

On July 12, 2019, the Association's representative filed a grievance on Turner's behalf, alleging a violation of article 13 of the CBA and requesting the following relief: "The District will remove the June 5th, 2019 letter from Greg Fisher to Jodi Turner from her personnel file or modify the letter to remove any inaccurate/non-factual statements and references." In substance, this challenged the placement of the letter in Turner's personnel file and her placement on intensive assistance without a prior evaluation, but it did not specifically request that she be evaluated. On July 29, Fisher responded that the District waived the second step (principal) and third step (superintendent) of the grievance procedure and consented to the Association proceeding "immediately to the fourth step of impartial, binding arbitration."

The parties selected an arbitrator, and the matter proceeded to an arbitration hearing.[5]  According to the arbitration ruling, the parties stipulated to the following issues to be decided: whether the grievance was arbitrable and, if so, whether the District violated the CBA and what would be an appropriate remedy.  Apparently, the Association argued the placement of Turner on intensive assistance was premature because it must be preceded by a proper and timely performance review, which Turner had not received.  The District agreed Turner had not received a performance review since 2015 and that shortcoming violated article 13 of the CBA, specifically section 13.06(C), requiring that Turner be evaluated every three years.  However, the District argued "intensive assistance does *not* have to be premised on a timely performance review" but is instead "an independent form of assessment, separate from the career teacher evaluation process."  While the District agreed section 13.10 of the CBA allowed Turner to grieve an evaluation under article 13, it argued said provision and Iowa Code section 284.8(2) precluded her ability to grieve placement on intensive assistance.  According to the arbitrator, "[t]his is a point the Association does not contest."  So, because intensive assistance is not grievable, the District argued it could not be ordered to remove the June 5 letter from Turner's file.

---

[5] The hearing was not reported.  Based on the arbitrator's ensuing ruling, she was apparently presented with evidence that was not presented to the district court and is therefore not included in the record on appeal, as the ruling contains factual details that are not supported by matters in the district court record, other than the arbitration decision itself.  The only items that were presented to the district court—the arbitration decision; the CBA; the June 5, 2019 letter to Turner; and grievance documents—came before the district court as attachments to various filings in the district court.  And while the parties apparently submitted post-hearing briefs to the arbitrator, they are not included in the record in this appeal.

Ultimately, the arbitrator found the CBA and applicable statutes demonstrate "that the contractually-established assessment system that applies to Turner requires three-year evaluations, permits intensive assistance, and assumes that the decision to put a teacher on intensive assistance will be preceded by a timely, properly performed evaluation." The arbitrator reasoned "this outcome turns on the conclusion that the system simply cannot work fairly in any other way." The arbitrator ordered the District to remove the June 5 letter from Turner's personnel file and "conduct a fair and objective evaluation of Turner's job performance."

In September 2020, the District filed an application to vacate or modify the arbitration award in the district court, asserting Turner's placement on intensive assistance and placement of the letter in her personnel file were not grievable and the arbitrator therefore exceeded her power.[6] *See* Iowa Code § 679A.12(1)(c). The court set a hearing to receive oral arguments in February 2021. Prior to hearing, the Association and Turner filed a motion for summary judgment. That motion was followed by pre-hearing briefs from the parties.

Following an unreported hearing, the court entered a ruling vacating the arbitration award in its entirety. The court concluded the arbitrator based her decision on "her own vision of justice" as opposed to the express terms of the CBA, the plain language of section 13.10 of the CBA and Iowa Code section 284.8(2) clearly render intensive assistance and its implementation not grievable, the issue was not arbitrable, and the arbitrator therefore exceeded her authority.

---

[6] The District did not specifically request the order that it conduct an evaluation of Turner be vacated.

The Association and Turner appeal.

## II. Standard of Review

"[W]e review the appeal of an arbitration award 'in the manner and to the same extent as from orders or judgments in a civil action.'" *Ales v. Anderson, Gabelmann, Lower & Whitlow, P.C.*, 728 N.W.2d 832, 838–39 (Iowa 2007) (quoting Iowa Code § 679A.17(2)). "Accordingly, our review is for correction of errors at law because this is an appeal from a court order in a civil law suit." *Id.* at 839. But our review is limited because applying "a broad scope of judicial review" that would "allow courts to 'second guess' an arbitrator . . . would nullify the very advantage of arbitration." *Id.* (quoting *$99 Down Payment, Inc. v. Garard*, 592 N.W.2d 691, 694 (Iowa 1999)). Unless the award "violate[s] one of the provisions of section 679A.12(1), we will not correct errors of fact or law." *Id.*

## III. Analysis

On appeal, the Association and Turner argue the district court "erred in substituting its judgment on the arbitrability of the grievance for the judgment of the arbitrator." The Association and Turner essentially argue arbitration is favored and, given "the very limited review of arbitration decisions," the district court exceeded its bounds and "should not have substituted its analysis of the CBA and law for that of the arbitrator."[7] They also argue the CBA and Iowa Code chapter 284 do not preclude arbitration of the grievance at issue.

---

[7] While the Association and Turner seem to argue the District consented to arbitration, they also agree that the issue of whether the grievance was arbitrable was an issue before the arbitrator. So we are somewhat puzzled about the claim that "[t]he record contains no reservation of the right to contest arbitrability in any manner by either party." The District disputed the arbitrability of the grievance both before the arbitrator and district court. And the parties stipulated to the arbitrator

Following an arbitration award, a party may apply to the district court to confirm, vacate, modify, or correct the award. Iowa Code §§ 679A.11–.13. Iowa Code section 679A.12(1)(c) provides, "[u]pon application of a party, the district court *shall* vacate an award if" the "arbitrators exceeded their powers." (Emphasis added.) "The arbitrator's power and authority is defined by any arbitration agreement between the parties and Iowa Code [chapter] 679A." *DLR Grp. Inc. v. Oskaloosa Cmty. Sch. Dist.*, No. 15-0356, 2016 WL 531824, at *3 (Iowa Ct. App. Feb. 10, 2016); *accord Humphreys v. Joe Johnston Law Firm, P.C.*, 491 N.W.2d 513, 516 (Iowa 1992).

In a nutshell, the arbitrator concluded implementation of intensive assistance could not occur unless predicated on a contractual evaluation, and the letter was based on a contractually deficient evaluation so it must be removed from Turner's personnel file, with the supposed effect of vacating Turner's placement on intensive assistance.[8] Defending the arbitrator's decision, the Association and Turner claim the District violated the CBA's evaluation procedure by failing to timely evaluate Turner's performance, which is not disputed, but it nevertheless proceeded to issue her a letter about her performance, noting deficiencies and

---

considering the threshold question of arbitrability of the dispute. To the extent the Association and Turner argue the consideration of arbitrability was limited to the arbitrator and not determinable by the district court, following the award and application to vacate, the district court's role in answering this threshold question was to determine "whether the parties agreed to settle the disputed issue by arbitration," which involved "determining the arbitrability of the dispute and the scope of the arbitrator's authority." *Postville Cmty. Sch. Dist. v. Billmeyer*, 548 N.W.2d 558, 560 (Iowa 1996).

[8] While the arbitrator's "award" did not expressly vacate the placement of Turner on intensive assistance, the parties seem to agree that the removal of the letter from her personnel file leads to that result.

"indicating that she would be placed on 'intensive assistance' leading to potential disciplinary action, although not describing what the intensive assistance would be."

Put simply, the issue before the district court was, and on appeal is, whether the parties agreed to binding arbitration on the issues presented, not whether the judiciary agrees with the arbitrator's award on the merits. *$99 Down Payment*, 592 N.W.2d at 694. "[T]he function of the courts is strictly limited to a determination of the arbitrator's authority and existence of an arbitrable dispute. Ordinarily courts may not inquire into the merits of the decision itself." *Cedar Rapids Ass'n of Fire Fighters, Local 11 v. City of Cedar Rapids*, 574 N.W.2d 313, 315–16 (Iowa 1998) (quoting *Teamsters Local 394 v. Associated Grocers of Iowa Coop., Inc.*, 263 N.W.2d 755, 757 (Iowa 1978)).

We proceed to the relevant issue in this appeal, whether the parties agreed to arbitrate the issues presented—i.e., whether the issues were arbitrable.[9] *See id.* at 316. This determination is guided by the relevant provisions of the CBA and Iowa Code chapter 284, and we answer the questions as a matter of law based on interpretation and construction. *Postville*, 548 N.W.2d at 560. We turn to the relevant provisions of the CBA and chapter 284.

---

[9] If arbitrable, the next consideration would be "whether the arbitrator's award 'drew its essence' from the [CBA]." *Cedar Rapids Ass'n of Fire Fighters*, 574 N.W.2d at 316 (quoting *Sergeant Bluff-Luton Educ. Ass'n v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, 282 N.W.2d 144, 148 (Iowa 1979)). That consideration is not relevant to this appeal.

A.     The CBA

The CBA includes provisions concerning "grievance procedure" and "evaluation procedure," articles 4 and 13, respectively.

*1.     Article 4*

A grievance only encompasses "a complaint by an employee [or] a group of employees of the Association that there has been an alleged violation, misinterpretation, or misapplication of any of the specific provisions of" the CBA. Under section 4.03, grievances progress through a four-step process until resolution: (1) attempts at informal resolution; (2) filing of a written grievance, discussion with the principal, and a decision by the principal; (3) submission of the grievance to the superintendent and answer; and (4) impartial, binding arbitration. At the fourth step, "[t]he arbitrator . . . shall not amend, modify, nullify, ignore, or add to the provisions of" the CBA, and his or her "authority shall be strictly limited to deciding only the issue or issues presented" and "must be based solely and only upon his/her interpretation of the meaning or application of the express relevant language of" the CBA.

*2.     Article 13*

The parties agree that, as a career teacher, Turner was to be evaluated once every three years under section 13.06(C). Here, it is undisputed that the District did not follow that rule as to Turner.  Normally, section 13.03 requires, "During each school year involving the performance review, the evaluator and employee shall mutually agree on dates for pre-observation, if necessary, formal observation, and post observation conferences."  Sections 13.04 and 13.05 describe the typical scenario for evaluation, the assessment, and timeline for "the

teacher and evaluator [to] meet to identify the teacher's current status in meeting the eight (8) Iowa Teaching Standards and to discuss any additional information or artifacts that are necessary to document success in meeting the Iowa Teaching Standards." Under section 13.06(D), if an evaluation results in a determination "that the teacher has not met any particular one of the eight standards or District Standards, then the evaluator and the teacher shall jointly determine what information the evaluator needs in order to indicate the teacher meets all eight (8) standards," and "[t]he teacher may request another observation or present the evaluator with data relative to the standard that is in question." Section 13.07 requires the "principal or appropriate supervisor [to] provide the employee with assistance designed to improve the quality of instruction and to eliminate difficulties noted in any evaluation," and "[a]ny assistance shall be noted in writing, and an initialed copy shall be retained by the appropriate supervisor and the employee." Section 13.08 mandates that "[a]ll observations of an employee shall be considered with full knowledge of the employee and solely for the purpose of evaluation toward the improvement of instructions, as a means of assuring the most competent educational techniques." Section 13.10, concerning the "right to grieve," provides:

> A non-probationary employee, who has been evaluated, has the right to grieve said evaluation as unfair, unjust, and/or inaccurate, the total evaluation is rated as unsatisfactory or not meeting the District's standards. . . . *Tier 3 (Intensive Assistance) is not grievable, nor can a teacher file a grievance when statutorily precluded.*

(Emphasis added.) Notably, the final clause of this provision obviously incorporates statutory preclusions on grievances imposed by the Iowa Code.

B. Iowa Code chapter 284

Iowa Code chapter 284 encompasses promotion of high student achievement accomplished by "[p]rofessional development designed to directly support best teaching practices" and "[e]valuation of teachers against Iowa teaching standards." Iowa Code § 284.1(2)–(3). Iowa Code section 284.8 concerns "performance review requirements for teachers." Section 284.8(1) provides, in relevant part:

> A school district shall provide for an annual review of each teacher's performance for purposes of assisting teachers in making continuous improvement, documenting continued competence in the Iowa teaching standards, identifying teachers in need of improvement, or to determine whether the teacher's practice meets school district expectations for career advancement. The review shall include, at minimum, classroom observation of the teacher, the teacher's progress, and implementation of the teacher's individual professional development plan, subject to the level of resources provided to implement the plan; and shall include supporting documentation from parents, students, and other teachers.

The term "performance review" is defined as "a summative evaluation of a teacher other than a beginning teacher that is used to determine whether the teacher's practice meets school district expectations and the Iowa teaching standards in accordance with section 284.8." *Id.* § 284.2(8). Section 284.8(2) provides:

> If a supervisor or an evaluator determines, *at any time*, as a result of a teacher's performance that the teacher is not meeting district expectations under the Iowa teaching standards specified in section 284.3, subsection 1, paragraphs "a" through "h", and the criteria for the Iowa teaching standards developed by the department in accordance with section 256.9, subsection 42, the evaluator shall, at the direction of the teacher's supervisor, recommend to the district that the teacher participate in an intensive assistance program. *The intensive assistance program and its implementation are not subject to negotiation and grievance procedures established pursuant to chapter 20.* All school districts shall be prepared to offer an intensive assistance program.

(Emphasis added.)  Chapter 284 defines "intensive assistance" as "the provision of organizational support and technical assistance to teachers, other than beginning teachers, for the remediation of identified teaching and classroom management concerns for a period not to exceed twelve months."  *Id.* § 284.2(6).

C.      Discussion

Sections 13.01 through 13.08 of the CBA and Iowa Code section 284.8(1) address the requirements of a formal evaluation or "performance review."  Under section 4.01 of the CBA, employees may grieve based on "an alleged violation, misinterpretation, or misapplication of any of the specific provisions of" the CBA.  That said, section 13.10 of the CBA limits the right to grieve an evaluation under article 13 to "[a] non-probationary employee, who has been evaluated."  It is undisputed that Turner had not been the subject of a recent formal evaluation under article 13 of the CBA or Iowa Code section 284.8(1).  Because there was no evaluation within the meaning of article 13, there was nothing to grieve, except for the District's failure to conduct an evaluation.  So that brings us back to section 4.01, which authorizes an employee to grieve a violation of the CBA, such as failing to evaluate a career teacher, like Turner, at least once every three years, as required by section 13.06(C).  Turner could grieve the district's failure to comply with the provisions of article 13.  But for requested relief in her grievance, she only challenged the placement of the letter in her file and requested its removal or modification.  She also did not grieve the corrective action of the letter, Fisher's placement of her "on the 'Intensive Assistance' track of the Iowa teacher evaluation system for the 2019–2020 school year."  While section 13.07 requires a teacher be provided "with assistance designed to improve the quality of instruction to

eliminate difficulties noted in any evaluation" and "[a]ny assistance shall be noted in writing, and an initialed copy" retained by the supervisor or employee, the CBA is silent on what may go into a personnel file[10] and the procedural process for placing a teacher on intensive assistance. The following sentence is the only time the CBA mentions intensive assistance: "Tier 3 (Intensive Assistance) is not grievable, nor can a teacher file a grievance when statutorily precluded."

As noted, the Association and Turner claim a formal evaluation under article 13 is a precursor to placement on intensive assistance. The CBA certainly does not require that, which makes sense because, if it did, then the would-be authorization to grieve a violation of that requirement in section 4.01 would be inconsistent with the prohibition against grieving intensive assistance contained in section 13.10. And the CBA expressly prohibited the arbitrator from amending, modifying, nullifying, or adding to the provisions of the CBA. Turning to the Iowa Code, section 284.8(1) provides for an annual review of a teacher's performance and minimum requirements, but section 284.8(2) and (3) mandate[11] a teacher's participation in an intensive assistance program upon a determination by "a supervisor or an evaluator," "*at any time*, as a result of a teacher's performance that the teacher is not meeting district expectations under the Iowa teaching standards . . . and the criteria for the Iowa teaching standard developed by the

---

[10] Section 13.09, concerning "personnel file," only concerns an employee's access to and reproduction of the file and the requirement that an employee be notified in writing of "[a]ny entry directed toward an employee which is placed in his/her personnel file."

[11] *See* Iowa Code § 284.8(3) ("A teacher who is not meeting the applicable standards and criteria based on a determination made pursuant to subsection 2 *shall* participate in an intensive assistance program." (emphasis added)).

department." (Emphasis added.) The statute does not require implementation of intensive assistance occur "at any time" after an appropriate evaluation, and "at any time," by itself, is not nebulous—it encompasses before, during, or after an evaluation. As noted, the CBA itself prohibits the grievability of a matter when precluded by statute, and "[t]he intensive assistance program and its implementation are not subject to negotiation and grievance procedures established pursuant to chapter 20." Iowa Code § 284.8(2); *see id.* § 20.18(1) ("Negotiated procedures may provide for binding arbitration of public employee and employee organization grievances over the interpretation and application of existing agreements."). The overarching theme of the claims by the Association and Turner is that the district court applied an inappropriate standard of review and exceeded its bounds by deciding the issue of arbitrability anew. As noted above, the district court's role included determining "whether the parties agreed to settle the disputed issue by arbitration," which involves "determining the arbitrability of the dispute and the scope of the arbitrator's authority." *Postville*, 548 N.W.2d at 560. That is what the district court did; it examined the CBA to assess whether the parties agreed to settle the issues raised by arbitration and, thus, whether deciding the issues was within the scope of the arbitrator's authority.

At oral argument the Association and Turner essentially argued the June 9 letter was an evaluation and the letter was therefore grievable as a violation of article 13 of the CBA.[12] The District argued intensive assistance is an independent

---

[12] The Association and Turner agreed in oral argument that Turner's placement on intensive assistance was not mentioned in the grievance and the intensive assistance plan was not grieved.

form of assessment separate from the evaluation process and is not grievable as an evaluation would be. The Iowa Code provides in detail the steps and requirements of what an evaluation is and how one is to be conducted. *See* Iowa Code § 284.8(1). The CBA likewise carefully outlines the evaluation procedure and schedule. The terms of neither require an evaluation prior to imposition of an intensive assistance plan. Our review of the letter discloses it did not comply with or attempt to comply with the CBA or statutory requirements for teacher evaluations. Consequently, it was not an evaluation, but was instead a preliminary notification of implementation of intensive assistance that provided the rationale therefore, which is not a grievable disciplinary instrument.

Our review of the record results in the following conclusions. There was no evaluation in accordance with article 13 for Turner to grieve under section 13.10 as unfair, unjust, or inaccurate. However, she could grieve the District's failure to conduct a timely and proper evaluation according to the terms of article 13. The District agreed it should be ordered to conduct a contractually proper evaluation based on its failure to timely evaluate Turner under the terms of the CBA. Nothing in the CBA prohibited the District from placing Turner on intensive assistance prior to a formal evaluation or placing the letter implementing intensive assistance in her personnel file, and there is no claim the CBA was misinterpreted or misapplied by the District on this point, so section 4.01 did not authorize a grievance.

At the end of the day, the parties contractually agreed to arbitration on the issue of the district's failure to timely provide a contractual evaluation, but the CBA prohibited the grievability and, thus, arbitrability of the implementation of intensive assistance. The June 9 letter was an instrument of the implementation of intensive

assistance, and the CBA provided no basis for grieving its placement in Turner's personnel file. In summary, the District's failure to timely evaluate Turner was grievable and arbitrable, but her placement on intensive assistance and the placement of the letter in her personnel file were not. As such, the arbitrator exceeded her powers in granting relief regarding the placement of the letter in Turner's file and implementation of intensive assistance, and the district court did not err in vacating those portions of the award. But we are left with one hiccup— the district court vacated the arbitrator's award in its entirety, including the arbitrator's requirement that the District conduct an evaluation of Turner. The District did not challenge that portion of the award in its application to vacate, and the parties' agreement that that issue was both grievable and arbitrable was present both before the district court and on appeal. On our review, the arbitrator's requirement that the District provide a contractual evaluation should therefore stand, but the remainder of the award was properly vacated by the district court. As such, the district court order is affirmed in part, reversed in part, and remanded for entry of an order reinstating the requirement that the District conduct a fair and impartial performance review of Turner.[13]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[13] The effectiveness of the CBA ended on June 30, 2019, prior to entry of the arbitration decision. Any evaluation resulting from this opinion should be conducted in accordance with currently prevailing contractual and statutory requirements.