**POSTVILLE COMMUNITY SCHOOL DISTRICT, Appellee,**

v.

**Jackie BILLMEYER, Appellant.**

**No. 95–377.**

Supreme Court of Iowa.

May 22, 1996.

Gerald L. Hammond, Des Moines, for appellant.

Donald H. Gloe of Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.C., Decorah, for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

This is an appeal from a district court ruling that vacated an arbitrator's decision favoring a school employee in a discharge action. The dispute is over the fundamental question of whether the discharge is even subject to arbitration. Because we believe the broad coverage of the parties' collective bargaining agreement permitted the employee to grieve his termination, we reverse.

Appellant Jackie Billmeyer worked as a night janitor for the Postville Community School District. In September 1993 he was criminally charged for acts involving two junior high school girls who baby-sat for his children. The acts—which allegedly involved sexually suggestive comments and occasional patting of buttocks—occurred at his personal residence over the summer. Billmeyer adamantly denied the conduct had any sexual overtones, but in October he entered an *"Alford"* plea to two counts of simple assault and paid two fifty-dollar fines plus court costs.

Billmeyer's continued employment at the school prompted the girls' parents to register complaints with the administration. Based on the district's policy against sexual harassment, Billmeyer was ultimately discharged in February 1994. Claiming his discharge constituted an unfair "evaluation" under the parties' collective bargaining agreement, Billmeyer filed a timely grievance. When informal procedures failed to resolve the case, it was scheduled for arbitration.

The school district challenged the arbitrability of the grievance in a prehearing motion before the arbitrator. It claimed that nothing in the master contract gave Billmeyer the right to grieve a termination based on misconduct. The arbitrator denied the motion but gave the district the opportunity to reassert the issue at the arbitration hearing.

During the hearing the parties tendered evidence on both the question of arbitrability and the merits of the grievance. The arbitrator held that the grievance was arbitrable.

He also concluded that, although Billmeyer's out-of-school conduct displayed poor judgment and lack of sensitivity, the school district did not meet its burden of proving just cause for discharge. Finally, the arbitrator ruled Billmeyer should be reinstated immediately with back pay, provided he obtain a satisfactory psychological evaluation.

Instead of reinstating Billmeyer, the school district filed an application in district court under Iowa Code section 679A.12(1)(e) (1993) to vacate, modify, or correct the arbitration award. The motion challenged the arbitrability of Billmeyer's grievance and claimed that the arbitrator's decision impaired the district's statutory duty to provide a safe environment for students. Billmeyer answered, denying the district's claims and counterclaiming for enforcement of the award in accordance with Iowa Code chapter 20, the public employment relations Act.[1]

Upon the parties' cross-motions for judgment on the pleadings, the district court issued an order vacating the arbitrator's decision. It held that Billmeyer was terminated due to misconduct, not incompetence, and that a discharge resting on misconduct is not arbitrable under the agreement. This appeal by Billmeyer followed.

■ I. This court has often said that in determining the arbitrability of a grievance, the "threshold" question is whether the parties agreed to settle the disputed issue by arbitration. *State v. State Police Officers Council,* 525 N.W.2d 834, 836 (Iowa 1994) (hereinafter "SPOC"); *Iowa City Community Sch. Dist. v. Iowa City Educ. Ass'n,* 343 N.W.2d 139, 141 (Iowa 1983); *Sergeant Bluff–Luton Educ. Ass'n v. Sergeant Bluff–Luton Community Sch. Dist.,* 282 N.W.2d 144, 147 (Iowa 1979). In fact, as will be seen, this appears to be the *only* question in such controversies. This court is obliged to answer the question as a matter of law, based on interpretation and construction of the parties' agreement. *American Fed'n of State, County & Mun. Employees v. State,* 526 N.W.2d 282, 283 (Iowa 1995) (hereinafter "AFSCME"); *SPOC,* 525 N.W.2d at 836.

Because the law favors arbitration, the court's duty is to construe the agreement broadly.

> "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*Sergeant Bluff,* 282 N.W.2d at 147–48 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417–18 (1960)).

■ The court's role in this analysis is strictly limited to determining the arbitrability of the dispute and the scope of the arbitrator's authority. *Sergeant Bluff,* 282 N.W.2d at 147. Put another way, the court need only determine (1) whether the grievant has alleged a violation of the collective bargaining agreement, and (2) whether the agreement's grievance procedure authorizes the arbitration of this particular dispute. *AFSCME,* 526 N.W.2d at 283. Beyond this two-part analysis, judicial inquiry into the merits of the dispute is not permitted. *SPOC,* 525 N.W.2d at 836. This limited judicial review "gives the parties what they have bargained for—binding arbitration, not merely arbitration binding if a court agrees with the arbitrator's conclusion." *Sergeant Bluff,* 282 N.W.2d at 147.

■ II. Article I section A of the parties' collective bargaining agreement defines "grievance" as

> a claim by an employee, or a group of employees, that there has been a violation, misrepresentation, or misapplication of any provision of this agreement.

Section C(4) of the agreement provides that all grievances approved by the education association may be submitted to binding arbitration if unresolved at prior levels of the grievance procedure.

---

1. In its reply to Billmeyer's affirmative defenses and counterclaim, the school district conceded that its challenge to the arbitration award should properly have been brought under Iowa Code § 20.17(6), with enforcement thereof governed by § 20.17(5).

Billmeyer's grievance alleged that the district's decision to terminate him was "predicated on [an] unfair, inaccurate, and unjust evaluation of [his] conduct." Because the master contract gives all employees the right to grieve an adverse evaluation, Billmeyer argues, his discharge is necessarily arbitrable. Rejecting this view of the contract, the district court held—and the school district asserts on appeal—that Billmeyer's discharge stemmed not from incompetence (all evaluations being favorable) but from misconduct, a nongrievable event.

As noted by this court in *AFSCME,* a mere claim or "allegation" relating to violation of the collective bargaining agreement is sufficient to meet the first prong of the two-pronged arbitrability test. 526 N.W.2d at 283. Billmeyer easily meets that test here. The fighting question is whether Billmeyer's claimed grievance falls within the realm of disputes covered by the agreement.

Article X of the agreement, "EVALUATION PROCEDURE," provides for a "formal evaluation" consisting of an annual written assessment of employee competence. Contrary to the school district's claim that only these formal evaluations are grievable, however, subsection B(5) of the contract contemplates informal evaluations:

> Evaluation of employees by the employer shall not be limited in any way at other times of the year, nor in any manner. The employer may evaluate through general observance, other written methods, verbal communications or other methods or combination of methods the employer so chooses.

Moreover, the contract plainly gives the employee the right to grieve *all* evaluations having an adverse impact. Subsection D states:

> *RIGHT TO GRIEVE.*
> All employees' evaluations are to be fair and accurate. An employee who has been evaluated has the right to grieve all evaluations, including the right to challenge said evaluations as unfair, unjust or inaccurate through the grievance procedure as set

forth in this agreement only if the employee is adversely impacted by evaluation. Adversely impacted is defined as termination for just cause. The right to grieve evaluations does not apply to procedures set forth in article IX, STAFF REDUCTION, of this agreement.

Other than the requirement that an employee be adversely impacted by the evaluation, the agreement contains no express limitation on arbitrability of evaluation grievances. This is in contrast to other express contractual provisions limiting arbitrability of other issues including evaluations made pursuant to staff reduction and requests for additional leave. We have held that when interpreting such agreements, "[t]he absence of an express exclusion supports finding exclusion was not intended." *Iowa City,* 343 N.W.2d at 141; *see also SPOC,* 525 N.W.2d at 836.

We note that the district court cited, and the school district relies on, *Atlantic Education Ass'n v. Atlantic Community School District,* 469 N.W.2d 689 (Iowa 1991), for the proposition that the right to arbitrate a particular issue must be described with more specificity in the contract. Their reliance on the case is misplaced. The issue in *Atlantic* was whether a teacher, subject to termination proceedings under Iowa Code chapter 279, could stay those proceedings while compelling arbitration of the negative performance evaluations giving rise to the termination decision. *Id.* at 690–91. Noting that grievance arbitration takes precedence over an ongoing chapter 279 proceeding only if the decision to terminate is itself arbitrable under the parties' collective bargaining agreement, *see id.* at 691, we observed that the contract in question did not provide for arbitration of evaluation grievances that resulted in termination. *Id.* Thus we upheld the court's denial of the teacher's arbitration demand. *Id.* at 692. This is factually dissimilar from the situation before us where the agreement specifically authorizes arbitration where an evaluation has an adverse impact (*i.e.,* just-cause termination) on an employee.[2]

---

**2.** Our review of *Atlantic,* 469 N.W.2d at 691, reveals language that might be challenged as

inconsistent with the prevailing view that doubts about a collective bargaining agreement's terms

We also find unpersuasive the school district's argument that incompetence must be distinguished from misconduct when construing the meaning of "evaluation" as it is used in the contract. Common sense suggests that the district's decision to fire Billmeyer necessarily involved an evaluative process. "Just cause" for termination involves assessing job performance as it relates to the school district's overall educational mission. *Sheldon Community Sch. Dist. v. Lundblad,* 528 N.W.2d 593, 596 (Iowa 1995). The concept is clearly broad enough to encompass both incompetence and misconduct. *See id.*

 Moreover, the district cannot now argue that discharge for misconduct was not intended to be included by the agreement because it is not a proper subject of bargaining. Although this court interprets mandatory bargaining topics narrowly, this "does not inhibit voluntary bargaining and agreement on permissive topics." *Iowa City,* 343 N.W.2d at 141; *see also SPOC,* 525 N.W.2d at 837. In that connection we quote with approval the arbitrator's observation:

> [T]he Employer, in Section B(5) *Evaluations,* reserved to itself a broad stretch of managerial discretion consistent with Employer rights under Chapter 20 and under common law. Such a reservation is logical. It could include all types of evaluations, both for competency and for misconduct.
>
> However, while reserving such broad discretion, a balance was struck in requiring all evaluations to be fair and reasonable, and that any termination be for "just cause." In addition, only adverse evaluations, specifically terminations, can be grieved. This is a realistic compromise. The Employer can evaluate all it wants but the employees can grieve only when it really matters, *i.e.* when someone is fired.

 Finally, we have considered and reject the school district's claim that forcing it to rehire Billmeyer would impair its statutory duty to furnish students a safe environment. *See* Iowa Code §§ 20.17(6), 280.14. The argument goes to the merits of the arbitrator's decision, a matter beyond the question of arbitrability. The court's limited scope of review prevents it from presuming an arbitrator exceeded its authority merely because it disagrees with the arbitrator's reasoning. *See Iowa City,* 343 N.W.2d at 144.

In conclusion, we note that it is not our function to determine whether the arbitrator has resolved the grievance correctly. *Sergeant Bluff,* 282 N.W.2d at 148. The question is whether the dispute before the arbitrator was arbitrable according to the parties' contract. In the interest of eliminating the delay and expense of litigation such as this, courts are obliged to interpret such agreements to favor arbitration. Reading the parties' contract broadly, as we must, we conclude that the controversy before us was grievable and thus subject to binding arbitration. The contrary conclusion reached by the district court must be reversed.

**REVERSED.**

must be resolved in favor of arbitration. To the extent that the analysis in *Atlantic* seems to depart from that precedent, we specifically disavow it.