**GENERAL CONFERENCE OF the EVANGELICAL METHODIST CHURCH, Petitioner–Appellant/Cross–Appellee,**

v.

**FAITH EVANGELICAL METHODIST CHURCH a/k/a Faith Church, Respondent–Appellee/Cross–Appellant.**

No. 11–0327.

Court of Appeals of Iowa.

Nov. 23, 2011.

Mark McCormick of Belin McCormick, P.C., Des Moines, and Randall C. Stravers of Stravers Law Firm, Oskaloosa, for appellant/cross-appellee.

David D. Dixon of Heslinga, Heslinga, Dixon & Moore, Oskaloosa, for appellee/cross-appellant.

Heard by SACKETT, C.J., and VOGEL and EISENHAUER, JJ.

VOGEL, J.

The General Conference of the Evangelical Methodist Church appeals a district court ruling ordering the scheduling of an annual conference. Faith Evangelical Methodist Church cross-appeals the ruling that compelled arbitration. We agree with the district court that the agreement between the parties required non-doctrinal issues be resolved by a form of arbitration. However, the district court considered more than the narrow issue before it, and erred in ordering the convening of an annual conference. We therefore affirm in part, and reverse in part.

## I. Background Facts and Proceedings

On May 12, 2002, Faith Evangelical Methodist Church (Faith) in Oskaloosa, Iowa, requested formal affiliation with the Evangelical Methodist Church, headquartered in Indianapolis, Indiana. The General Conference of the Evangelical Methodist Church (EMC) is the governing body of the denomination. When Faith attempted to sever that affiliation in 2010, EMC filed with the district court an "Application by Motion for Order to Compel Arbitration."

David Brown has served as pastor at Faith since January 2005. Some resistance to EMC policies was shared by Pastor Brown with the Faith congregation. On May 2, 2010, Faith sent a letter to EMC, informing EMC that it was "the unanimous decision of our boards of Trustees and Stewards, as well as our congregation to withdraw from the Evangelical Methodist Church." On May 19, Superintendent J. Vernon Conner of the EMC replied to Pastor Brown and the officers of Faith, noting that by its actions, Faith had violated the *EMC Book of Discipline* (the

*Discipline*) "in quite a few areas." EMC concluded that it would not honor Faith's "illegal termination," and Superintendent Conner stated he would be in Oskaloosa on Sunday May 23 for worship, and expected to meet with the congregation's leaders that afternoon.

The meeting occurred as scheduled but the dispute on the congregation's withdrawal remained unresolved. On May 26, 2010, EMC sent Pastor Brown a letter removing him as a "temporary supply pastor" at Faith, and asking him to "tender [his] resignation no later than June 13, 2010."[1] Two days later, on May 28, Bob Waal, Chairman of Faith's Board of Stewards, sent Superintendent Conner a letter again stating Faith's intent to withdraw from the EMC. Waal wrote that because Faith had not been notified of the date of its annual church conference, Faith was "submitting this letter at this time in order to comply with the Discipline of the Evangelical Methodist Church."

On July 13, 2010, EMC wrote a letter to Faith, stating that Faith's "purported withdrawal" was invalid because no valid withdrawal vote was taken and there was no basis to withdraw at the time of the purported vote. The letter further stated that if Faith was allowing Pastor Brown to occupy the pulpit or remain on the premises despite his removal as pastor, such action would constitute "an improper use of a place of EMC worship." The letter finally advised: "Unless the undersigned receives confirmation that [Faith] will participate in conciliation within fifteen (15) days of the date of this letter, the EMC will initiate legal action to require [Faith] to participate in Christian Conciliation." On July 26, 2010, Faith responded to EMC's July 13 letter, stating that it had decided to

retain Pastor Brown. The letter did not address conciliation.

On September 30, 2010, EMC filed this action in district court to compel Faith to "comply with its agreement to participate in conciliation, mediation and arbitration." Faith responded, requesting dismissal as the matter at hand involved a "doctrinal dispute" that could not be settled by the courts. A hearing was held on November 12 and 15, 2010. The district court granted the application to compel arbitration and further directed that EMC and Faith "shall schedule an annual conference for Faith . . . to be held within 120 days of the filing of this ruling." EMC appeals and Faith cross-appeals.

## II. Standard of Review

■ We review a district court's ruling on a motion to compel arbitration for the correction of errors at law. *Wesley Retirement Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 29 (Iowa 1999).

## III. Cross–Appeal

### A. Agreement to Arbitrate

■ We begin by addressing Faith's cross-appeal, in which Faith argues the district court erred in finding a valid contract between the parties containing a requirement the parties arbitrate their non-doctrinal disputes. In interpreting the language of an agreement to arbitrate a dispute, our judicial task is twofold: "to determine whether there is a valid agreement to arbitrate and to determine whether the controversy alleged is embraced by that agreement." *Lewis Cent. Educ. Ass'n v. Lewis Cent. Cmty. Sch. Dist.*, 559 N.W.2d 19, 21 (Iowa 1997).

---

1. According to the May 26, 2010 letter from EMC, Pastor Brown was appointed by a superintendent on a temporary basis and under the superintendent's supervision.

■■■ " 'Arbitration is a matter of contract and parties cannot be compelled to arbitrate a question which they have not agreed to arbitrate.' " *Bullis v. Bear, Stearns & Co., Inc.*, 553 N.W.2d 599, 601–02 (Iowa 1996). In determining the arbitrability of an agreement, our threshold question is "whether the parties agreed to settle the disputed issue by arbitration." *Postville Cmty. Sch. Dist. v. Billmeyer*, 548 N.W.2d 558, 560 (Iowa 1996). EMC contends there is a valid agreement between the parties to arbitrate the disputed issues; Faith asserts there is no written contract between the parties, as required under Iowa Code section 679A.1 (2009), which would compel arbitration.

Iowa Code section 679A.1(2) governs arbitration as it relates to future controversies arising between parties. It specifically references the necessity of a written contract, stating:

> A provision in a *written contract* to submit to arbitration a future controversy arising between the parties is valid, enforceable, and irrevocable unless grounds exist at law or in equity for the revocation of the contract. This subsection shall not apply to any of the following:
>
> a. A contract of adhesion.
>
> b. A contract between employers and employees.
>
> c. Unless otherwise provided in a separate writing executed by all parties to the contract, any claim sounding in tort whether or not involving a breach of contract.

Iowa Code § 679A.1(2).

■■■ EMC argues that the *Discipline*, which contains the constitution, by-laws, and governing documents of EMC, "is contractual even though the *Discipline* does not expressly use the term 'contract' in identifying the parties' relationship." EMC maintains the *Discipline* functions as an offer to local churches to join the General Conference of the EMC, and that the terms of the offer are the terms contained in the *Discipline*. Paragraph 701 of the *Discipline* states, in pertinent part,

> The Evangelical Methodist Church, its districts and congregations (collectively, the "Parties," individually, "party") agree that they will attempt to resolve all non-doctrinal disputes among themselves without resort to the courts. A non-doctrinal dispute is a dispute within the Evangelical Methodist Church that a civil court could otherwise decide and, therefore, does not include matters of church doctrine.

EMC further contends that Faith accepted this offer by adopting its Resolution for Affiliation. The second paragraph of Faith's Resolution for Affiliation states:

> WHEREAS, this congregation desiring to be known as the Faith Evangelical Methodist Church, Oskaloosa, Iowa *has accepted as to the general practice and ritual that body of religious doctrine, and that collection of rules and procedures and organization entitled, Discipline of the Evangelical Methodist Church.*

(Emphasis added).

Our courts turn to general principles of contract law in determining the validity of an arbitration agreement. *See Bullis*, 553 N.W.2d at 602 (applying general principles of contract law to determine whether a party is bound by an arbitration agreement it did not sign). "It is fundamental that a valid contract must consist of an offer, acceptance, and consideration." *Margeson v. Artis*, 776 N.W.2d 652, 655 (Iowa 2009). In this case, the *Discipline* contained EMC's offer and the Resolution for Affiliation was Faith's acceptance. By Faith's statement in its Resolution for Affiliation to accept "the collection of rules

and procedure and organization entitled, *Discipline of Evangelical Methodist Church,*" Faith agreed to be bound by the provisions of the *Discipline,* including the arbitration provision in paragraph 701. *See, e.g., Gen. Conference of Evangelical Methodist Church v. Evangelical Methodist Church of Dalton, Georgia, Inc.,* 807 F.Supp.2d 1291, 1294 (N.D.Ga.2011) (holding that where a local church affiliated with EMC executed an Affiliation Resolution, the church agreed to accept the *Discipline,* and also agreed to be bound by the arbitration provision in section 701). Based on general principles of contract law, the record supports there was an offer and acceptance between the parties in their assent to be bound and formally affiliated. *See Anderson v. Douglas & Lomason Co.,* 540 N.W.2d 277, 285 (Iowa 1995) ("All contracts must contain mutual assent; mode of assent is termed offer and acceptance.").

■ In addition, a valid contract requires consideration. "Generally, the element of consideration ensures the promise sought to be enforced was bargained for and given in exchange for a reciprocal promise or an act." *Margeson,* 776 N.W.2d at 655. The consideration for both parties appears to be the mutual benefits obtained through the denominational relationship.

Because the three requisite elements of a contract—offer, acceptance, and consideration—were present between the parties, we affirm the district court's finding that the parties agreed to be bound by the provisions encompassed in the *Discipline.*

■ Faith next argues that assuming a contract is found to exist, it is a contract of adhesion, for which an exception exists under Iowa Code section 679A.1(2)(a). A contract of adhesion has been described as being "drafted unilaterally by the dominant party and then presented on a take-it-or-leave-it basis to the weaker party who has no real opportunity to bargain about its terms." *Penn. Life Ins. Co. v. Simoni,* 641 N.W.2d 807, 813 (Iowa 2002) (internal quotation marks omitted). Faith argues that when it signed the Resolution for Affiliation, "there was no negotiation back and forth with EMC relative to any terms and conditions in the discipline," nor was Faith "advised by EMC or made aware by them of any provisions in the *Discipline* relative to arbitration or any provisions relative to withdrawal from the church. Rather, all that was discovered later." At the November 2010 hearing, Bob Waal also explained that although the church was initially formed in 2002, he could not recall receiving a copy of the *Discipline* until around 2006.

EMC asserts Faith's Resolution for Affiliation was not a contract of adhesion because "Faith ... freely chose to affiliate with EMC. The *Discipline* is a contract among equals and not an adhesion contract."[2] EMC further disputes Waal's assertion that Faith's founding members were not given a copy of the *Discipline* at the time of the implementation of the affiliation, as the terms of the original "offer" to affiliate with EMC were contained in the *Discipline.* In addition, EMC asserts the local church leaders were under no obligation to join EMC, and had ample opportunity to inform themselves as to the various provisions of the *Discipline* deciding to affiliate with EMC.

**2.** The district court did not specifically find the agreement between the parties was not a contract of adhesion, but by finding it was a valid contract, it infers the same. EMC does not challenge the preservation of error as to this issue, and we elect to address the issue as it does not change our affirming the finding of an agreement to be bound.

The determination of whether a contract is a contract of adhesion involves the issue of unconscionability. *Hofmeyer v. Iowa Dist. Ct.*, 640 N.W.2d 225, 230 (Iowa 2001). Our supreme court has held that "[s]tandardized contracts ... drafted by powerful commercial units and put before individuals on the 'accept this or get nothing' basis, are carefully scrutinized by the courts for the purpose of avoiding enforcement of 'unconscionable' clauses." *Id.* With respect to unconscionability in the bargaining process, as alluded to by Faith, the Restatement (Second) of Contracts § 208(d), at 109 (1981) states, in pertinent part:

> Factors which may contribute to a finding of unconscionability in the bargaining process include the following: belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors.

Although this is not an exhaustive list of factors that render the bargaining process unconscionable, we find that none of these factors, nor any other facts provided by the parties, indicate the agreement between the two parties and contained in the *Discipline* was unconscionable. We therefore conclude that the agreement between the parties was a valid contract—and not a contract of adhesion—and no exception therefore applies under Iowa Code section 679A.1(2).

## B. Controversy Within Scope of Agreement to Arbitrate

Finding that a valid arbitration agreement exists, we must next determine whether the conflict plaguing EMC and Faith is non-doctrinal in nature, as such a finding would compel arbitration under the *Discipline*. EMC contends the property dispute between the parties "concerns the attempt by members of Faith ... to remove the Oskaloosa church property as a place of EMC worship without following the *Discipline*" and that this dispute is non-doctrinal. Faith alleges the dispute between the parties is doctrinal because the underlying dispute, that is the reason Faith is attempting to withdraw from EMC, concerns doctrinal differences between Pastor Brown and EMC. Paragraph 701 of the *Discipline* states:

> A non-doctrinal dispute is a dispute within the Evangelical Methodist Church that a civil court could otherwise decide and, therefore, does not include matters of church doctrine. For example, all disputes between the Parties concerning real and personal property, including all property questions arising out of or related to the withdrawal of a congregation from the Evangelical Methodist Church, are non-doctrinal disputes. The Parties agree to abide by the requirements of the *Discipline* regarding withdrawal and other non-doctrinal disputes. This Chapter does not govern disputes regarding a minister's or member's alleged violation of church doctrine, including those matters discussed in Paragraphs 901–961 of the *Discipline*.

In his letter dated May 19, 2010, Superintendent Conner wrote, "It is our intent to salvage all persons, congregations and property. However, when it appears that it is not possible to salvage the first two, we will salvage the property." Faith fears

that if the parishioners and congregation leave EMC without following the proper procedure, an injustice may occur such that they "will have to leave behind for EMC their $90,000 church building that they paid for themselves with no assistance from EMC."

Because either a proper withdrawal under the *Discipline* or an improper withdrawal where Faith's church building could be left in the hands of EMC will affect the property interests of both parties, and these property interests are contemplated in and embraced by the language of paragraph 701, we find that a non-doctrinal dispute exists between the parties and that the dispute concerning the property, which stems from the proposed withdrawal, is subject to resolution via the agreed upon method under the *Discipline* utilizing "Christian conciliation, mediation, or arbitration." We therefore affirm the district court's ruling, granting EMC's application for order to compel arbitration.

## IV. Ordering Annual Conference

In its appeal, EMC asserts the district court correctly ordered arbitration but erred by addressing the merits of the underlying dispute and exceeded its authority by ordering:

> EMC and Faith Church shall schedule an annual conference for Faith Church to be held within 120 days of the filing of this ruling. Faith Church shall comply with the provisions of paragraph 209 of the *Discipline* if it seeks withdrawal from EMC.

Faith responds by stating that as a fundamental tenet of equity, where EMC invoked the court's equitable jurisdiction, the court "properly had authority to direct that such be scheduled according to the terms of the *Discipline* [that] EMC was otherwise asking enforcement of."

EMC's original motion to compel arbitration contained only one request—"that [the district court] grant its motion and order Faith EMC Church to comply with its agreement to participate in conciliation, mediation and arbitration with the Institute for Christian Conciliation." Our supreme court has held that "in determining the arbitrability of a grievance, the 'threshold' question is whether the parties agreed to settle the disputed issue by arbitration." *Billmeyer*, 548 N.W.2d at 560. "In fact ... this seems to be the *only* question in such controversies. [We] are obliged to answer the question as a matter of law, based on interpretation and construction of the parties' agreement." *Id.* Therefore, "the court need only determine (1) whether the grievant has alleged a violation of the [underlying contract], and (2) whether the agreement's grievance procedure authorizes the arbitration of this particular dispute." *Id.* "Beyond this two-part analysis, judicial inquiry into the merits of the dispute is not permitted." *Id.*; *see Lewis Cent. Educ. Ass'n*, 559 N.W.2d at 21 (explaining that where a party's resistance to arbitration was tied to arguments that went to the merits of the case, rather than any language of the agreement establishing the types of issues that could be arbitrated, "a court is foreclosed from deciding issues of contract interpretation that involve the merits of the underlying dispute" and further stating that a court is not restricted "from interpreting the language in the contract that affects the extent of the agreement to arbitrate a dispute"). We conclude the district court erred in ordering the scheduling of an annual conference for Faith because this order went beyond the narrow request in the petition and at least partially to the merits of the dispute—procedure for church withdrawal—which affects each parties' property interests and is subject to arbitration under the *Discipline.*

We therefore affirm the grant of the motion to compel arbitration. We reverse the order directing the scheduling of an annual conference and procedures for seeking withdrawal from the Evangelical Methodist Church.

**AFFIRMED IN PART, REVERSED IN PART.**