**IN THE COURT OF APPEALS OF IOWA**

No. 16-0088
Filed December 21, 2016

**KENT WELSH,**
        Plaintiff-Appellee,

**vs.**

**LITHIA VAUDM, INC. d/b/a LITHIA VOLKSWAGEN OF DES MOINES and ANTHONY M. GLADNEY,**
        Defendants-Appellants.
_____

        Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom, Judge.


        A car dealership appeals the district court's ruling denying its motion to compel arbitration. **AFFIRMED.**



        Jeffrey D. Ewoldt of Hopkins & Huebner, P.C., Des Moines, for appellants.

        Michael S. Jones of Patterson Law Firm, L.L.P., Des Moines, for appellee.


        Heard by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

This case involves an oral contract between customer Kent Welsh and Lithia Volkswagen of Des Moines to repair for $4336 the car owned by Kent and his wife, Julie.[1]  On appeal, Lithia asserts the district court erred in denying its motion to compel arbitration, which was based on an arbitration clause printed on the invoice Julie signed when she picked up the repaired car.  Because we decline to address arguments Lithia did not present to the district court and because we conclude, as did the district court, that no additional consideration was given by Lithia to modify the parties' oral contract as required under Iowa law, we affirm.

## I.      Background Facts and Prior Proceedings

The facts are undisputed.  On January 14, 2015, Welsh took his 2008 Volkswagen Toureg to Lithia for evaluation of possible mechanical problems, complaining the vehicle's "oil pressure" light was activated.  Lithia's business includes servicing and repairing vehicles.  After Lithia evaluated the car, its employee called Welsh and recommended repairs costing $4336.  Welsh agreed, and based on the parties' oral contract, Lithia proceeded to repair the Volkswagen.  The parties did not discuss arbitration in the phone conversation.

Lithia replaced the oil pump, test drove the car, and discovered the "check engine" light was activated.  Lithia again evaluated the car, concluding the timing chains likely required replacement, and contacted Volkswagen of America, which confirmed Lithia's evaluation.  Lithia then replaced the timing chains and

---

[1] In this opinion we refer to Kent Welsh as "Welsh," to Julie Welsh as "Julie," and to both parties as "the Welshes."

adjustors and listed this repair on the subsequently generated invoice as no charge.[2]

When Julie picked up the car two months later, on March 16, 2015, she understood Welsh and Lithia had agreed in their telephone conversation to a repair cost of $4336. The dealership gave Julie a three-page document to sign entitled "INVOICE." She signed, paid, and took the vehicle. Immediately above Julie's signature the invoice provided for the arbitration of disputes "pursuant to the Federal Arbitration Act [(FAA)], 9 U.S.C. § 1 et seq."

A few days later, the Welshes returned the car to Lithia, noting the "check engine" light was activated. After evaluation, Lithia proposed a costly repair the Welshes declined to authorize.

On July 15, 2015, the Welshes sued Lithia for damages arising from the dealership's alleged failure to repair the car; Julie was dismissed as a party in August. Citing the arbitration clause printed in its invoice, Lithia moved to compel arbitration, stating: "On or about March 16, 2015, [the parties] entered into a contractual Agreement (hereinafter 'Agreement') for certain repairs to the vehicle."

Welsh resisted Lithia's motion, asserting the arbitration clause was not part of the parties' agreement and stating Lithia was attempting to add a condition to the parties' oral contract after performance of that contract had been completed.

---

[2] During litigation, Lithia asserted the "total cost" for repairing the timing chains and adjustors was more than $5000.

Lithia's reply, including an affidavit from Lithia's general manager, asserted: (1) the applicable federal arbitration statute[3] preempts the Iowa arbitration statute's conflicting restrictions and exemptions;[4] (2) "when a party has the opportunity to read a contract before signing it, but fails to do so, he cannot be heard to complain because the terms were different than supposed"; and (3) Julie was acting as Welsh's agent as to mutual assent and meeting of the minds, and a valid contract was created by her signature.

Noting Lithia's affidavit acknowledged the vehicle was brought in on January 14, 2015, and returned on March 16, 2015, Welsh argued this sworn statement confirmed the document signed by Julie "was simply an invoice provided upon return of the vehicle rather than at the time the vehicle was delivered or the repairs authorized."

On December 17, 2015, the court resolved Lithia's motion on the parties' affidavits and briefs, considering "this matter akin to a summary judgment motion." In determining "whether the invoice creates an enforceable contract between the parties," the court stated: "The language of the invoice invokes the [FAA], not the Iowa statute. Under the [FAA], state law governs whether there is a valid contract to arbitrate." Citing *Gen. Conference of Evangelical Methodist*

---

[3] Lithia quoted 9 U.S.C. § 2, adding emphasis as follows:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy *thereafter arising out of such contract or transaction*, . . . *shall be valid, irrevocable, and enforceable,* save upon such grounds as exist at law or in equity for the revocation of any contract.

[4] Lithia specified the inapplicable Iowa exemptions are "denying arbitration of future controversies sounding in tort and contracts of adhesion." Based on the manager's statements, Lithia also claimed the federal requirement of an "interstate nexus" was met because the parties' contract evidenced "a transaction involving interstate commerce." Welsh responded the affidavit failed to prove an "interstate nexus" based on the Iowa parties' agreement to repair a car in Iowa.

*Church v. Faith Evangelical Methodist Church*, 809 N.W.2d 117, 121 (Iowa Ct. App. 2011), the court recognized: "Arbitration is a matter of contract, and parties cannot be compelled to arbitrate absent an agreement to do so." Relying on Iowa contract law requiring additional consideration to modify a contract effectively, as explained in *Margeson v. Artis*, 776 N.W.2d 652, 657 (Iowa 2009), the district court found "there was no consideration for a subsequent modification" of the "contract to repair the vehicle for the agreed price." Concluding "the arbitration clause in the invoice is not part of the parties' contract" and the "contract was formed prior to March 16, 2015," the court denied Lithia's motion to arbitrate. *See Margeson*, 776 N.W.2d at 657 ("Our law clearly requires some new consideration to support the modification of a contract.").

Lithia filed a motion under Iowa Rule of Civil Procedure 1.904, raising for the first time arguments based on the Iowa Uniform Commercial Code (UCC) and the parol evidence rule. But before the district court could rule, Lithia appealed, depriving the court of jurisdiction. Thereafter, our supreme court denied Lithia's motion for a limited remand to allow the district court to rule on its post-trial motion.

On appeal,[5] Lithia first claims because the contract was for a sale of goods, the UCC governs the transaction and the court's findings were erroneous under the UCC. *See id.* at 657 n.5 (stating the UCC "entirely eliminates the

---

[5] Lithia also presents an argument premised on parol evidence. During oral arguments, Lithia's counsel claimed the parol-evidence issue was central, guiding, and controlling. But we decline to address that issue. Iowa Rule of Appellate Procedure 6.903(2)(g)(1) requires appellants to state how issues were preserved for appellate review, "with references to the places in the record where the issue was raised and decided." Because Lithia's briefing does not refer us to any place in the record where this issue was decided, it has waived the issue, and we do not address it. *See Runyon v. Kubota Tractor Corp.*, 653 N.W.2d 582, 584 (Iowa 2002).

requirement to show independent consideration in sale-of-goods cases in order to permit 'necessary and desirable modifications of sale contracts'"). Welsh responds, first, Lithia failed to preserve error on UCC claims and second, if error was preserved, the UCC does not govern the oral contract to repair the car, a mixed contract for services and goods, where the contract's "predominate purpose" was services. Alternatively, Lithia argues new consideration, in fact, existed for the written repair invoice.

## II. Scope and Standards of Review

We review the district court's ruling on Lithia's motion to compel arbitration for the correction of errors at law. *Sutcliffe v. Mercy Clinics, Inc.*, No. 13-1974, 2014 WL 4631406, at *2 (Iowa Ct. App. Sept. 17, 2014) (resolving whether arbitration provision is enforceable under the FAA); *Faith Evangelical*, 809 N.W.2d at 120.

## III. Applicable Law

"The party seeking to compel FAA arbitration must show the existence of a written agreement which contains an arbitration clause and involves interstate commerce." *Sutcliffe*, 2014 WL 4631406, at *2; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967) (stating the FAA, if applicable, governs "transactions in 'commerce'"). "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Bazemore v. Jefferson Capital Sys., L.L.C.*, 827 F.3d 1325, 1329 (11th Cir. 2016) (noting threshold question of whether an arbitration agreement exists between the parties is "simply a matter of contract" (citation

omitted)). Moreover, the FAA does not require parties to arbitrate where the parties have not agreed to arbitrate. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (stating FAA "was designed 'to make arbitration agreements as enforceable as other contracts, but not more so'" (citation omitted)). Under the FAA, ordinary principles of state contract law as to the formation of contracts determine whether there is a valid agreement to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Accordingly, the district court correctly turned to Iowa contract law to resolve the threshold question of whether there was a valid agreement to arbitrate between Lithia and Welsh.

### IV.    Error Preservation

Lithia did not ask the district court to address whether the UCC applied to the parties' mixed contract for both goods and services before the court entered its ruling. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

Lithia nevertheless asserts its rule 1.904 motion "elaborated" on its position by citing the UCC and additional authorities, claiming it is of "no consequence" those authorities were cited in its post-trial motion because the "overarching issues presented to the district court were contract formation and arbitrability." Lithia contends applicability of the UCC is not a different issue, but an authority that "only became relevant after the lower court completed its analysis and (erroneously) declined to enforce the arbitration provision." In support, Lithia relies on a footnote in *Bartlett Grain Co. v. Sheeder*, which noted

"both parties presented their positions in a fairly conclusory fashion" without citation to the UCC. 829 N.W.2d 18, 24 n.4 (2013). *Bartlett* rejected the failure-to-preserve-error challenge and resolved issues concerning the sale-of-grain contract under the UCC. *See id.*

The *Bartlett* footnote does not control the instant circumstances. Article 2 of the UCC applies only to "transactions in goods." *See* Iowa Code § 554.2102 (2015). The *Bartlett* dispute concerned "the sale of grain, which is a good." 829 N.W.2d at 23. Thus, the issue in *Bartlett* was *how* to apply Article 2 to an indisputable contract for the sale of goods, a contract clearly governed by the UCC; thus, the applicability of the UCC was not an issue.

In contrast, the dispute here requires a threshold determination of a much-litigated issue, *whether* Article 2 applies to this *mixed contract* for both the sale of goods (the replacement parts) and the provision of services (diagnosing the problem, correctly installing the replacement parts, and evaluating whether the repair fixed the problem). *See* Sonja A. Soehnel, Annotation, *Applicability of UCC Article 2 to Mixed Contracts for Sale of Goods and Services*, 5 A.L.R. 4th Art. 501 (2016). Specifically,

> UCC Article 2 governs the sale of goods and excludes the rendition of services, but does not address transactions involving a mixture of goods and services. Therefore, judge-made rules have been developed to determine whether such transactions are subject to Article 2. The most widely accepted of these is the "predominant purpose' test, under which a mixed transaction is subject in its entirety to Article 2 if it is predominantly for the sale of goods, but falls outside Article 2 if it is predominantly for services.

Gary D. Spivey, Annotation, *Applicability of UCC Article 2 to Mixed Contracts for Sale of Goods and Services*, 8 A.L.R.7th Art. 4 (2016); *see also Bonebrake v.*

*Cox*, 499 F.2d 951, 960 (8th Cir. 1974) (applying Iowa law and "predominant purpose" test to decide whether contract's "purpose, reasonably stated, is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved").

It is not a sensible exercise of our appellate review to determine, in the first instance, whether the UCC applies to this mixed contract for car repairs without the benefit of the district court's decision. This is especially so where Iowa courts have not resolved the mixed-contract-UCC-applicability issue in the context of car repairs.[6] *See Meier*, 641 N.W.2d at 537. Thus, we do not address Lithia's claims based on the UCC.

## V. Contract to Arbitrate Disputes—*Bartlett*

Lithia contends this case is controlled by *Bartlett'*s "identical facts" and resolution.[7] *See* 829 N.W.2d at 21-23. In *Bartlett*, a farmer orally agreed to sell corn to a grain company at a set price at an "anticipated delivery date." *Id.* at 21.

---

[6] Other courts have concluded a mixed contract to repair a vehicle is a contract predominately for services and thus outside the purview of Article 2 of the UCC. *See Janke v. Brooks*, No. 11-CV-00837-REB-BNB, 2012 WL 1229891, at *3 (D. Colo. Apr. 11, 2012) ("The primary purpose of a repair transaction is not to sell or purchase parts, but to change or improve the item and return it to the owner. In such cases, the provision of goods is incidental, and the UCC does not apply."); *Heart of Texas Dodge, Inc. v. Star Coach, LLC*, 567 S.E.2d 61, 63 (Ga. Ct. App. 2002) (ruling custom conversion of new vehicle is "closely analogous to repair cases" so "the UCC does not apply" (citing *Am. Warehouse & Moving Serv. of Atlanta, Inc. v. Floyd's Diesel Servs., Inc.*, 296 S.E.2d 64, 66 (Ga. Ct. App. 1982) ("[T]he transaction was a contract for appellee's services to repair appellant's original engine and . . . the supplying of new component parts was merely an 'incidental part' of appellee's overall services in this regard."))); *Mitchell v. Speedy Car-X, Inc.*, 712 N.E.2d 768, 769-70 (Ohio Ct. App. 1998) (finding claim for failure to repair car is based on the defendant providing a service— performing some repair on plaintiff's car and any goods sold were incidental to the repair service, thus, UCC did not apply).

[7] Both parties asked our supreme court to retain this case to resolve an issue "of broad public importance"—whether a business may compel arbitration based on language in a document the business prepared and delivered after performance was complete. The supreme court declined and transferred the case to this court.

Shortly thereafter and *before* the parties performed the oral contract, the buyer sent the seller a two-page document entitled "Purchase Confirmation." The seller signed and returned the confirmation, which was also signed by the buyer. *Id.* The written confirmation stated:

> THE LAW RECOGNIZES TELEPHONE TRANSACTIONS TO BE LEGALLY BINDING. CONTRACTS ARE SENT TO CONFIRM PHONE CONVERSATIONS, ENSURING THAT BOTH PARTIES UNDERSTAND THE TERMS, AND AS A MATTER OF RECORD. PLEASE REVIEW THIS CONFIRMATION AND NOTIFY [THE BUYER] IF THERE ARE ANY TERMS YOU DO NOT UNDERSTAND OR THAT MAY BE IN ERROR.

*Id.*[8] While the parties' oral agreement did not contain an agreement to arbitrate disputes, the signed confirmation contained an arbitration clause. *Id.*

The district court in *Bartlett* concluded there was no enforceable agreement between the parties to arbitrate; the supreme court reversed, finding the elements of offer, acceptance, and consideration "present" in the written confirmation under Iowa common law. *Id.* at 23-24. Referencing the above language, the court found there is "no doubt on this record" the confirmation was "intended as a final expression of at least the terms contained therein." *Id.* at 25. Also, the seller "did not object to any of those clauses and provisos, but instead signed and returned" the confirmation. *Id.* Finally, both parties "signed the confirmation. The writing signed by both parties itself establishes the existence of a contract." *Id.* at 26.

---

[8] Page two of the *Bartlett* confirmation included similar information, telling the seller the buyer sent the document "to confirm" its contract to purchase grain "according to the terms set forth on both sides of this document. Failure to advise [the buyer] immediately of any discrepancies, objections to or disagreement with this confirmation of the terms constitutes acceptance of those terms." 829 N.W.2d at 21.

Lithia asserts, like the confirmation in *Bartlett*, the invoice signed by Julie was the written confirmation of the parties' final agreement. Our review shows the instant case is easily distinguished from *Bartlett*. Before either party in *Bartlett* performed their obligations under the oral contract, the seller signed a document entitled "confirmation" that specifically asked him to immediately tell the buyer if he disagreed with any terms of the written contract, and the buyer also signed the contract. *See id.* at 24-26. The March 2015 document Lithia asks us to find is a binding written contract *was not executed before either party performed*; instead, Welsh had delivered the car for an evaluation, Lithia had evaluated the car and proposed repairs costing $4336, Welsh agreed to pay that amount, Lithia repaired the car, and only when Julie arrived to pay for the completed repairs and retrieve the car did she sign a document entitled "invoice," not "confirmation." Finally, Lithia did not sign the invoice. Because *Bartlett* is factually dissimilar, we turn to an analysis under Iowa common law of the transaction before us.

### VI. Modification of the Parties' Oral Contract

Lithia next argues the district court's ruling failed to recognize the basic principle that written agreements such as the invoice are presumed to be supported by consideration. *See Meincke v. Nw. Bank & Tr. Co.*, 756 N.W.2d 223, 227 (Iowa 2008). In its post-trial motion and on appeal, Lithia asserts: "Lithia's work in replacing the oil pump and the timing chains and adjustors, and

[the Welshes'] act of paying money and waiting for those repairs to be completed," constituted "independent consideration."[9] We are not persuaded.

General principles of contract law determine the validity of an arbitration agreement. *Faith Evangelical*, 809 N.W.2d at 121. For a contract to be valid in Iowa, it must contain three elements—offer, acceptance, and consideration. *Margeson*, 776 N.W.2d at 655. The consideration element supports the fact "contract law exists to enforce mutual bargains, not gratuitous promises." *Id.* Generally, "when the parties modify a contract, a new contract arises." *Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 706 (Iowa 2016). But where "the parties to a contract modify the terms, there must be some new and valid consideration." *Id.* The party asserting a lack of consideration, here Welsh, must establish the defense. *See Margeson*, 776 N.W.2d at 656.

We look for the element of consideration in the language of the contract and by "what the parties contemplated at the time the instrument was executed." *Id.* (citation omitted); *see also Meincke*, 756 N.W.2d at 227. A promise to perform a preexisting duty generally does not constitute additional consideration. *Margeson*, 776 N.W.2d at 656; *Recker v. Gustafson*, 279 N.W.2d 744, 758 (Iowa 1979). Specifically,

> a promise made by one party to a contract normally cannot be enforced by the other party to the contract unless the party to whom the promise was made provided some promise or performance in exchange for the promise sought to be enforced. In other words, if the promisor did not seek anything in exchange for the promise made, . . . the promise made by the promisor is unenforceable due to the absence of consideration.

---

[9] In response to a question during oral arguments, Lithia's counsel agreed the parties' agreement was to fix the car and Lithia is not parsing the agreement into replacing one part versus replacing another, i.e., oil pump versus timing chains.

*Margeson*, 776 N.W.2d at 655-56.

Applying these principles, we conclude the district court was correct in its analysis. The document containing the arbitration language was not signed when Welsh brought his vehicle to Lithia to be repaired. After the repairs were completed, Julie did not seek anything in exchange for the promise to arbitrate; Lithia already had completed its work at the set price, making her promise to arbitrate unenforceable due to the absence of consideration. *See id.* In other words, no additional consideration existed where Lithia, the promisee, had a preexisting duty under the oral contract to evaluate and repair the car for a set price, and it did so. *See id.* at 656 (finding "the modification was nothing more than a unilateral price hike"). Lithia's alleged modification was nothing more than a *post-performance*,[10] unilateral demand by it to submit any future disputes to arbitration. *See id.* *After* Lithia completed the repairs, it asked the Welshes to give up their right to litigate in court in return for the same performance by Lithia—repairing the car at the set price. *See id.*; *see also McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 527 (Iowa 2015) (stating contract law enforces mutual bargains not gratuitous promises); *Gill v. Vorhes*, No. 15-0785, 2016 WL 4051643, at *12 (Iowa Ct. App. July 27, 2016) (finding purported modification invalid where it "did not impose any additional duties . . . or require [the promisee (here, Lithia)] to do anything that [it] was not already legally obligated to do"); *Stieneke v. United Bank of Iowa*, No. 12-1952, 2013 WL 5498053, at *5 (Iowa Ct.

---

[10] In response to a question during oral arguments, Lithia's counsel admitted Lithia is "essentially" asking this court to rule substantive terms can be added to an agreement *after* performance by the parties. Lithia has not cited any cases so holding.

App. Oct. 2, 2013) (finding no consideration for modification where promisee did not offer "anything in addition to or different from that which they had already promised").

Thus, Lithia cannot enforce the promise to arbitrate because there is no evidence Lithia "promised to do something more than [it] had promised to do under the [oral] agreement."[11]  *Margeson*, 776 N.W.2d at 658.  Accordingly, we affirm the district court's denial of Lithia's motion to compel arbitration.

**AFFIRMED.**

---

[11] Based on our resolution, we need not address Lithia's claims concerning contract signatories, interstate commerce, and agency.