# IN THE COURT OF APPEALS OF IOWA

No. 17-0482
Filed April 18, 2018

**JM 48, LLC,**
    Plaintiff-Appellee,

**vs.**

**HEARTLAND CO-OP,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Heartland Co-op appeals a district court ruling denying its motion to compel arbitration. **AFFIRMED.**

John F. Lorentzen of Nyemaster Goode, P.C., Des Moines, for appellant.

Gina C. Badding of Neu, Minnich, Comito, Halbur, Neu & Badding, P.C., Carroll, for appellee.

Heard by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

Heartland Co-op (Heartland) appeals a district court ruling denying its motion to compel arbitration. Heartland contends the parties entered into an arbitration agreement that is enforceable under the Federal Arbitration Act (FAA) as well as the Iowa Arbitration Act (IAA) and, therefore, the district court erred in denying its motion to compel arbitration. Heartland alternatively argues an arbitration agreement should be enforced through the doctrine of promissory estoppel.[1]

## I.  Background Facts and Proceedings

The following facts are generally undisputed. In May 2010, Gerald Murphy, on behalf of JM 48, LLC (JM), signed a contract authorization form with Heartland. The authorization form provided:

> I the customer grant the following individuals authorization to enter into grain contracts on behalf of the account name and number stated above, including credit sale contracts and warehouse receipts.
> . . . .
> Contracting of Grain: I represent to Heartland on behalf of the Customer that: (1) we routinely sell grain to elevator; (2) we have the particular skills and knowledge of grain trading practices that enable us to understand the terms of grain sale contracts enter into; (3) we are a merchant with respect to the sale of grain; and (4) each of the individuals names above is authorized to enter into grain contracts with Heartland on our behalf. National Grain and feed Association [(NGFA)] Rules apply to all contracts.

---

[1] Heartland also requests this court to overrule *Des Moines Asphalt & Paving Co. v. Colcon Industries Corp.*, 500 N.W.2d 70, 72 (Iowa 1993) to the extent it held "an order denying a motion to compel arbitration is a final adjudication and . . . is appealable as a matter of right." The supreme court transferred this case to us knowing full well "[w]e are not at liberty to overrule controlling supreme court precedent." *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014); *see also Fell P'ship v. Heartland Co-op*, No. 16-1180, 2017 WL 2875870, at *2 (Iowa Ct. App. July 6, 2017) ("To the extent it held an order to deny a motion to compel arbitration is final and appealable as a matter of right, *Des Moines Asphalt* is the law."), *further review denied* (Aug. 30, 2017). We therefore decline to entertain Heartland's request.

> I understand that it is my responsibility to notify Heartland Co-op of any changes in this authorization.

Rule 29 of the NGFA rules provides the following:

> Where a transaction is made subject to these rules in whole or in part, whether by express contractual reference or by reason of membership in this Association, then the sole remedy for resolution of any and all disagreements or disputes arising under or related to the transaction shall be through arbitration proceedings before the [NGFA] pursuant to the NGFA® Arbitration Rules; provided, however, that at least one party to the transaction must be a NGFA member entitled to arbitrate disputes under the NGFA Arbitration Rules.

There is nothing in the record to indicate that the NGFA rules or rule 29 specifically were attached to the authorization form or that JM was otherwise provided with a copy of them.

In October 2011, roughly a year-and-a-half after Murphy signed the authorization form, JM delivered corn to Heartland, and the parties entered into an oral agreement whereby Heartland agreed to sell JM's corn. Heartland prepared a settlement confirmation document evidencing JM's delivery of corn to Heartland, but that document contained no contract terms and did not reference the contract authorization form or the NGFA rules; and there is nothing in the record to indicate, and no argument has been made, that the terms of the authorization form were discussed in relation to the formulation of the oral agreement.

In October 2016, JM filed a petition at law alleging Heartland breached the oral contract.[2] Heartland filed a motion to compel arbitration and stay the proceedings. The district court denied the motion, concluding the parties never entered into a legally enforceable arbitration agreement. Heartland filed a motion

---

[2] The petition also asserted claims of unjust enrichment and conversion.

to amend requesting the court address its alternative promissory-estoppel argument. The court amended its ruling to address the promissory-estoppel argument but affirmed its denial of Heartland's motion to compel arbitration.

As noted, Heartland appeals.

## II. Standard of Review

Appellate review of a district court's ruling on a motion to compel arbitration is for correction of errors at law. *Wesley Ret. Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 29 (Iowa 1999); *Gen. Conference of Evangelical Methodist Church v. Faith Evangelical Methodist Church*, 809 N.W.2d 117, 120 (Iowa Ct. App. 2011). "[W]e begin with the established principle that the issue of arbitrability is a question for the courts and is to be determined by the contract entered into by the parties," if any. *Hawkins/Korshoj v. State Bd. of Regents*, 255 N.W.2d 124, 127 (Iowa 1977).

## III. Discussion

### A. Enforceability Under the FAA or IAA

Heartland contends the parties entered into an arbitration agreement that is enforceable under the FAA as well as the IAA and, therefore, the district court erred in denying its motion to compel arbitration. The FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Similar to the FAA, the IAA provides: "A provision in a written contract to submit to arbitration a future controversy arising between the parties is valid,

enforceable, and irrevocable unless grounds exist at law or in equity for the revocation of the contract." Iowa Code § 679A.1(2) (2016).

The FAA expressly requires the arbitration agreement to be represented in "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. The IAA similarly requires an agreement to arbitrate to be "a provision in a written contract." Iowa Code § 679A.1(2).

Heartland argues "[t]he written provision to arbitrate is found in Rule 29 of the NGFA Rules" and JM agreed to arbitrate in May 2010 by signing the authorization form, which stated the NGFA rules apply to all contracts. Heartland further argues the alleged agreement to arbitrate became part of the subsequent oral agreement in October 2011.

The parties agree that the contract authorization form is not a contract. Heartland contends the authorization form was instead an offer, and the so-called mirror-image rule therefore incorporates the authorization form into any subsequently-formed contract. Even if we were to accept Heartland's argument that the existence of the NGFA rules satisfies the "written provision" requirement, an arbitration agreement is still only enforceable under the FAA or the IAA where it is memorialized in a written contract or agreement. *See* 9 U.S.C. § 2; Iowa Code § 679A.1(2); *see also Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (noting application of the FAA requires "a written agreement that includes an arbitration provision" (citation omitted)); *Caley v. Gulfstream Aerospace Corp.* 428 F.3d 1359, 1368–69 (11th Cir. 2005) (discussing the "written agreement" requirement); *Gen. Conference of Evangelical Methodist Church*, 809

N.W.2d at 121 (noting Iowa Code section 679A.1(2) "specifically references the necessity of a written contract").

The validity and enforceability of an arbitration agreement is determined by state contract law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). Heartland argues the May 2010 contract authorization form constituted a standing offer that all future contracts between the parties would be subject to NGFA rules. In oral arguments, Heartland seemed to base this contention on the mirror-image rule, which requires that an acceptance conforms strictly to an offer in all of its conditions, without any deviation whatsoever. *See Shell Oil Co. v. Kelinson*, 158 N.W.2d 724, 728 (Iowa 1968). But the purpose of the mirror-image rule is not to bootstrap terms into a contract; its purpose is to assess whether an acceptance matches an offer such that the agreeing parties reached a mutual manifestation of assent. *See id.* There is nothing in the record to indicate, and no argument has been made, that the terms of the authorization form were included in the offer or acceptance relating to the formulation of the October 2011 oral agreement. Were we considering a situation in which the offer concerning that agreement included an arbitration provision and the acceptance did not, or vice versa, then consideration of the mirror-image rule might be appropriate to determine whether the parties entered into an enforceable contract. The mirror-image rule simply does not apply to the facts of this case.

The authorization form is just that—a form authorizing a named individual to enter into grain contracts in the future. "An offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Heartland Express, Inc.*

*v. Terry*, 631 N.W.2d 260, 268 (Iowa 2001) (internal quotation marks omitted) (quoting *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 285 (Iowa 1985)). Heartland argues the form constituted an offer. If that were so, the acceptance of that offer would be a contract. But, clearly, if Heartland's response to the alleged offer were, "We accept," then what would be the terms of the contract beyond simply an acceptance of JM's offer to authorize the named individual to enter into contracts with Heartland in the future? The contract authorization form contains no language that can be construed as a manifestation of willingness to enter into any transaction or that signing the form would consummate any transaction. Beyond the parties agreeing who would be authorized to enter into future grain contracts, the form was at most an agreement to agree or contract in the future, which "is of no effect unless all of the terms and conditions of the contract are agreed on and nothing is left to future negotiations." *Crowe-Thomas Consulting Grp., Inc. v. Fresh Pak Candy Co., Inc.*, 494 N.W.2d 442, 444–45 (Iowa Ct. App. 1992); *accord First American Bank v. Urbandale Laser Wash, LLC*, 874 N.W.2d 650, 656 n.4 (Iowa Ct. App. 2015) ("At best, the parties had a nonbinding agreement to agree. A writing that clearly contemplates the subsequent execution of a formal agreement raises the inference that the parties to the writing did not intend to be bound until the subsequent formal agreement is finalized."); *cf. Moonsammy v. Mercy Hosp.*, No. 08-1638, 2009 WL 2525500, at *5 (Iowa Ct. App. Aug. 19, 2009) ("[A]uthorization forms are generally not held to be contracts in and of themselves.").[3]

---

[3] We also note our concern as to whether the NGFA applicability provision contained in the authorization form would even be enforceable against JM had the form amounted to

We conclude the May 2010 contract authorization form had absolutely no effect on the October 2011 oral agreement, except to identify the person authorized to make the oral agreement. We are therefore left with the October 2011 oral agreement between the parties. This clearly did not involve "an agreement in writing to submit to arbitration," *see* 9 U.S.C. § 2, or "a written contract to submit to arbitration." *See* Iowa Code § 679A.1(2).

The contract authorization form had no legal effect on the oral agreement and the oral agreement did not amount to an enforceable arbitration agreement under either the FAA or the IAA. We conclude no enforceable arbitration agreement existed between the parties and, therefore, the district court's denial of Heartland's motion to compel arbitration did not amount to legal error.

B.    Enforcement by Promissory Estoppel

Heartland alternatively argues an arbitration agreement should be enforced through the doctrine of promissory estoppel. "The theory of promissory estoppel allows individuals to be held liable for their promises despite an absence of the consideration typically found in a contract." *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 532 (Iowa 2015) (quoting *Schoff v. Combine Ins. Co. of Am.*, 604

---

a so-called standing offer. *See generally Timmerman v. Grain Exch., LLC*, 915 N.E.2d 113, 116, 120–21 (Ill. App. Ct. 2009) (concluding provision in contracts stating "this contract is subject to the Rules of the National Grain and Feed Association" was unenforceable to require arbitration because "[t]he contracts themselves made no direct mention of arbitration. The Rules were not set forth in the contracts, nor had they been provided to or made available to the plaintiffs prior to their entering into the contracts. The plaintiffs were not directed to where to find the Rules. There is no indication that the arbitration provision had been negotiated between the parties. The arbitration provision of the contract was so difficult to find and read that the plaintiffs cannot fairly be said to have been aware that they were agreeing to it").

N.W.2d 43, 48 (Iowa 1999)). A party attempting to employ promissory estoppel must prove:

> (1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Schoff*, 604 N.W.2d at 49. "[S]trict proof of all elements is required." *Id.* at 50 (quoting *Nat'l Bank of Waterloo v. Moeller*, 434 N.W.2d 887, 889 (Iowa 1989)). As to the first element, the supreme court has defined a "promise" as "[a] declaration . . . to do or forbear a certain specific act." *Id.* at 50–51 (alteration and ellipsis in original) (quoting *Black's Law Dictionary* 1213 (6th ed. 1990)). The supreme court has distinguished between promises and representations, which are "statement[s] . . . made to convey a particular view or impression of something with the intention of influencing opinion or action." *Id.* at 51 (quoting *Webster's Third New International Dictionary* 1926 (unab. ed. 1993)).

On the issue of promissory estoppel, the district court concluded:

> . . . [T]he elements are not met in this case. . . . [T]here is no clear and definite promise to arbitrate. Rather, the reference to the NGFA rules was one sentence of an authorization form signed more than a year before the sale of any grain. Arbitration was never expressly referenced. Second, there was no showing that JM made the promise with the clear understanding that Heartland was seeking an assurance upon which it could rely and without which it would not act. . . . Heartland did not reference arbitration at all in the documents and did not confirm that the parties would follow NGFA rules at the time of delivery. If the arbitration provision was important to Heartland, it is certainly not reflected by the record in this case. Heartland likewise cannot show the substantial detriment or injustice elements . . . .

Based upon our review of the record, we agree with the district court that JM never made a clear and definite promise to arbitrate any disputes arising out of its dealings with Heartland.  There is absolutely no express reference to any promise to arbitrate in the May 2010 contract authorization form.  There is also no indication in the record that JM made such a promise when it delivered corn to Heartland in October 2011.  Because the essential elements of promissory estoppel are not present in this case, Heartland is not entitled to its application.

**VI.    Conclusion**

Based on the foregoing, we affirm the district court's denial of Heartland's motion to compel arbitration in its entirety.

**AFFIRMED.**